UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN ASSOCIATION OF POLITICAL CONSULTANTS, INC., | ) ) ) | |
| DEMOCRATIC PARTY OF OREGON, INC., | ) ) | |
| PUBLIC POLICY POLLING, LLC, | ) ) | |
| TEA PARTY FORWARD PAC, and | ) ) | Civil Action No. _____ |
| WASHINGTON STATE DEMOCRATIC CENTRAL COMMITTEE, | ) ) ) ) | |
| **Plaintiffs** | ) ) | |
| vs. | ) ) | |
| LORETTA LYNCH, in her official capacity as Attorney General of the United States | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT

COMES NOW American Association of Political Consultants, Inc. ("AAPC"), Democratic Party of Oregon, Inc. ("DPO"), Public Policy Polling, LLC ("PPP"), Tea Party Forward PAC ("TPF"), and Washington State Democratic Central Committee ("WSDCC") (collectively "Plaintiffs") by and through counsel, and allege the following:

**I.    NATURE OF THE CASE**

1.    This is a civil action wherein Plaintiffs pray for declaratory judgment as well as preliminary and permanent injunctions to restrain Defendant from acting under color of law to deprive Plaintiffs of rights secured to them by the First Amendment to the United States Constitution.

2. Specifically, Plaintiffs allege that the ban on certain calls to cell phones in the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) (hereinafter the "cell phone call ban"), is an unconstitutional violation of their First Amendment rights because it is content based and cannot withstand strict scrutiny.

## II. JURISDICTION

3. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331.

## III. VENUE

4. Venue lies with this Court pursuant to 28 U.S.C. § 1391(e)(1)(C) because a plaintiff resides in this district and this case does not involve real property.

## IV. AUTHORITY FOR RELIEF

5. Authority for declaratory relief sought by Plaintiffs is conferred upon this Court by 28 U.S.C. §§ 2201 and 2202, and by Fed. R. Civ. P. 57.

## V. PARTIES

6. Plaintiff AAPC is a bipartisan, nonprofit association of political professionals located in McLean, Virginia and organized under § 501(c)(6) of the Internal Revenue Code ("IRC"). AAPC provides education for its members and advocates for the protection of political free speech. AAPC members include political fundraisers, organizers, and persons who conduct and analyze political polls, i.e. political pollsters and opinion researchers. AAPC members make calls to persons on their cell phones to solicit political donations and to discuss political and governmental issues.

7. Plaintiff DPO is located in Portland, Oregon and organized as a tax-exempt nonprofit organization under § 527 of the IRC. DPO works to promote the interests of the Democratic Party in the State of Oregon including coordinating, organizing and electing

Democratic candidates. DPO makes calls to registered Democratic and progressive non-affiliated voters on their cell phones to discuss political and governmental issues, give voters critical information to help them with the voting process, encourage voters to return their ballots by deadlines and vote for Democratic candidates, and solicit political donations.

8. Plaintiff PPP is a limited liability for-profit company located in Raleigh, North Carolina. PPP measures and tracks public opinion on candidates, campaigns, and other political issues with automated telephone surveys. PPP makes calls to persons on their cell phones on behalf of politicians, political organizations, unions, consultants, and other organizations.

9. Plaintiff TPF is located in Alexandria, Virginia and organized as a tax-exempt nonprofit organization under § 527 of the IRC. TPF works to promote the interests of the Tea Party by reforming political parties and government to advance the core principles of the Founding Fathers, recruiting Americans who share that same vision, and encouraging grassroots operations to vote and elect candidates who represent these ideals. TPF makes calls to potential voters on their cell phones to solicit political donations and discuss political and governmental issues.

10. Plaintiff WSDCC is the Democratic Party in the State of Washington and is located in Seattle, Washington. WSDCC is organized under § 527 of the IRC. WSDCC works to elect Democrats, uphold Democratic values, and support Democrats across the state. WSDCC members include elected officials, candidates for office, activists, and voters. WSDCC makes calls to registered voters on their cell phones to discuss political and governmental issues and to solicit political donations.

11. Defendant Loretta Lynch ("Attorney General") heads the United States Department of Justice ("DOJ") which is the agency in the United States government responsible

for enforcement of federal law. In her official capacity as Attorney General of the United States, she enforces the law complained of in this action. Plaintiffs sue her in her official capacity.

## VI. STANDING

12. Plaintiff AAPC has Article III standing as an organization to bring suit on behalf of its members. *See* Declaration of Alana Joyce in Support of Standing, attached hereto as Exhibit A; *see also Friends of the Earth v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 181 (2000); *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

13. Plaintiff DPO has Article III standing to bring suit as it has a personal stake in the outcome of the action. *See* Declaration of Brad Martin in Support of Standing, attached hereto as Exhibit B; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

14. Plaintiff PPP has Article III standing to bring suit as it has a personal stake in the outcome of the action. *See* Declaration of Dean Debnam in Support of Standing, attached hereto as Exhibit C; *see also Lujan*, 504 U.S. at 560.

15. Plaintiff TPF has Article III standing to bring suit as it has a personal stake in the outcome of the action. *See* Declaration of Niger Innis in Support of Standing, attached hereto as Exhibit D; *see also Lujan*, 504 U.S. at 560.

16. Plaintiff WSDCC has Article III standing to bring suit as it has a personal stake in the outcome of the action. *See* Declaration of Karen Deal in Support of Standing, attached hereto as Exhibit E; *see also Lujan*, 504 U.S. at 560.

## VII. STATEMENT OF FACTS

17. Congress passed the TCPA in 1991 as Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227) to protect telephone subscribers' privacy rights in connection with commercial telephone solicitations.

18. Congress instructed the Federal Communications Commission ("FCC") to account for the "free speech protections embodied in the First Amendment of the Constitution" when considering the impact of any restrictions on noncommercial communications. TCPA, Pub. L. 102-243, § 2(13).

19. The TCPA states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
> …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii) (the "cell phone call ban").

20. The TCPA regulations define "emergency purposes" as "calls made necessary in any situation affecting the health and safety of consumers." *Id.* at (f)(4) (hereinafter the "emergency exemption").

21. The TCPA defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

22. The FCC, the states, through their attorneys general or otherwise, and private persons, including classes of persons, can sue for actual or statutory damages for violations of the cell phone call ban for $500 or more per telephone call. *Id.* at (b)(3), (g); 47 U.S.C. § 503.

23. The TCPA provides that the FCC "shall prescribe regulations to implement the requirements of this subsection …." 47 U.S.C. § 227(b)(2).

24. In the 1992 Order regarding the implementation of the TCPA, the FCC stated the purpose of its regulations under this subsection:

> This R&O amends part 64 of the Commission's rules by adding § 64.1200 to restrict the use of automatic telephone dialing systems and artificial or prerecorded voice messages for telemarketing purposes or for transmitting unsolicited telephone facsimile advertisements. The rules require that persons or entities making telephone solicitations establish procedures to protect residential subscribers from unwanted solicitations, and set forth exemptions to certain prohibitions under this part …. The rules are intended to impose reasonable restrictions on autodialed or prerecorded voice telephone calls consistent with considerations regarding public health and safety and commercial speech and trade, and to allow consumers to avoid unwanted telephone solicitations without unduly limiting legitimate telemarketing practices.

57 Fed. Reg. 48333 (Oct. 23, 1992).

25. Since 1992, the FCC and Congress have passed at least six exemptions to the cell phone call ban which apply based on the identity of the caller and/or the content of the exempted calls.

26. In 2012, the FCC exempted from the cell phone call ban "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged." 77 Fed. Reg. 34233, 34235 (June 11, 2012) (hereinafter referred to as the "wireless exemption").

27. In 2014, the FCC exempted from the cell phone call ban prerecorded and ATDS calls for "package delivery notifications to consumers' wireless phones either by voice or text … so long as those calls are not charged to the consumer recipient, including not being counted against the consumer's plan limits on minutes or texts, and comply with the conditions …." *In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling*, 29 FCC Rcd 3432, 3439 (Mar. 27, 2014) (hereinafter referred to as the "package delivery exemption").

28. In 2014, the FCC exempted from the cell phone call ban prerecorded and ATDS "non-telemarketing voice calls or text messages to wireless numbers … [that] rely on a representation from an intermediary that they have obtained the requisite consent from the consumer." *In the Matter of GroupMe, Inc. / Skype Communications S.A.R.L.*, 29 FCC Rcd 3442, 3444 (Mar. 27, 2014) (hereinafter referred to as the "intermediary consent exemption").

29. In 2015, the FCC exempted from the cell phone call ban prerecorded and ATDS "non-telemarketing, healthcare calls that are not charged to the called party" and "for which there is exigency and that have a healthcare treatment purpose …." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.*, 30 FCC Rcd 7961, 8930-31 (July 10, 2015) (hereinafter referred to as the "HIPAA exemption").

30. In 2015, the FCC exempted from the cell phone call ban prerecorded and ATDS calls regarding "(1) 'transactions and events that suggest a risk of fraud or identity theft; (2) possible breaches of the security of customers' personal information; (3) steps consumers can take to prevent or remedy harm caused by data security breaches; and (4) actions needed to arrange for receipt of pending money transfers.'" *Id*. at 8023 (hereinafter referred to as the "bank and financial exemption").

31. In 2015, Congress exempted from the cell phone call ban prerecorded and ATDS calls "made solely to collect a debt owed to or guaranteed by the United States". TCPA, Pub. L. No. 114-74, § 301(a) 129 Stat. 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii)) (hereinafter referred to as the "debt collection exemption").

**COUNT I**
**(The Cell Phone Call Ban is a Content-based Restriction on Speech)**

32. Plaintiffs incorporate by reference the allegations in paragraphs one through 31.

33. The First Amendment reflects a "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open," and has "consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318 (1998).

34. "[P]olitical speech is at the very core of the First Amendment." *Carey v. Fed. Elec. Comm'n.*, 791 F. Supp. 2d 121, 133-34 (D.D.C. 2011) (citing *Buckley v. Valeo*, 424 U.S. 1, 39 (1976)). "The First Amendment affords the broadest protection to such political expression in order 'to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by people.'" *McIntyre v. Ohio Elec. Comm'n.*, 514 U.S. 334, 346 (1995).

35. The First Amendment to the United States Constitution prohibits discrimination as to the content of speech or the identity of the speaker. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

36. The debt collection exemption created by Congress and the FCC's exemptions are based on the content of the speech, which includes the identity of the speaker. *U.S. v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000). Content-based restrictions of protected speech are subject to strict scrutiny. *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("As a content-based regulation of speech, the anti-robocall statute is subject to strict scrutiny … [u]nder this standard, the government must prove 'that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'"); *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 800 (1988) ("These more narrowly tailored rules are in keeping with the First Amendment directive that government not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored.").

37. The Defendant therefore bears the burden of demonstrating that the cell phone call ban is narrowly tailored to further a compelling interest which it is entitled to protect using the least restrictive means available. *Secr'y of the State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 959-61 (1984); *Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 636-37 (1980). The cell phone call ban does not satisfy strict scrutiny.

38. The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the wireless exemption. *See* 77 Fed. Reg. at 34235. By favoring commercial speech over Plaintiffs' political speech, the cell phone call ban violates the constitutional rights of these political organizations. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 513 (1980).

39. The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the package delivery exemption. *See* 29 FCC Rcd at 3435. By favoring commercial speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations. *See Metromedia,* 453 U.S. at 513.

40. The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the intermediary consent exemption. *See* 29 FCC Rcd at 3444. By favoring this speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations. *See Metromedia,* 453 U.S. at 513.

41. The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the HIPAA exemption. *See* 30 FCC Rcd at 8031. By favoring this speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations. *See Metromedia,* 453 U.S. at 513.

42. The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the bank and financial exemption. *See* 30 FCC Rcd at 8024-28. By favoring commercial speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations. *See Metromedia,* 453 U.S. at 513.

43. The TCPA restricts Plaintiffs' fully-protected, political speech whereas the TCPA permits prerecorded and ATDS commercial calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the debt collection exemption. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). By favoring commercial speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations. *See Metromedia,* 453 U.S. at 513.

44. The cell phone call ban is therefore an unconstitutional content-based restriction on Plaintiffs' fully-protected, political speech in violation of the First Amendment. *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

## COUNT II
### (The Cell Phone Call Ban is Underinclusive)

45. Plaintiffs incorporate by reference the allegations in paragraphs one through 44.

46. A law is underinclusive and thus not narrowly tailored "when it discriminates against some speakers but not others without a legitimate 'neutral justification' for doing so." *Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 345 (4th Cir. 2005) ("Even when the government has a compelling interest for restricting speech, it may not seek to further that interest by creating arbitrary distinctions among speakers that bear no 'reasonable fit' to the interest at hand.").

47. An underinclusive statute "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2740 (2011) (holding that a California statute that prohibited the sale or rental of "violent video games" to minors violated the First Amendment because it was underinclusive and did not preclude minors from having access to violent information in other forms).

48. The cell phone call ban is underinclusive because it exempts commercial prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the wireless exemption. *See* 77 Fed. Reg. at 34235.

49. The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the package delivery exemption. *See* 29 FCC Rcd at 3435.

50. The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the intermediary consent exemption. *See* 29 FCC Rcd at 3444.

51. The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the HIPAA exemption. *See* 30 FCC Rcd at 8031.

52. The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the bank and financial exemption. *Id*. at 8024-28.

53. The cell phone call ban is underinclusive because it exempts commercial prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the debt collection exemption. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

54. There is no relation between any legitimate government purpose behind the cell phone call ban and the speech banned, regulated, or allowed by it.

55. Plaintiffs' speech is no more harmful than the speech allowed by the content-based exemptions to the cell phone call ban.

56. The cell phone call ban is an impermissible means of advancing any legitimate interest of Defendant. The cell phone call ban is therefore unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief and judgment from this Court:

1. A preliminary injunction enjoining the enforcement of the TCPA by Defendant, its agents and employees against these Plaintiffs, and others similarly situated;

2. A permanent injunction enjoining the enforcement of the TCPA by Defendant, its agents and employees against these Plaintiffs, and others similarly situated;

3. A declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 that the TCPA on its face is unconstitutional as it violates the First Amendment to the United States Constitution;

4. An award of nominal damages in the amount of $1.00 as a result of Defendant's violation of Plaintiffs' constitutional rights;

5. An order requiring that Defendant pay all costs, interest, and attorneys' fees as may be incurred with this civil action as allowed by law; and

6. An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiffs' grievances.

Dated: May 12, 2016.

Respectfully Submitted,

/s/ Charles George
Charles George
NC State Bar No. 21003
Wyrick Robbins Yates & Ponton LLP
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607
919-781-4000
919-781-4865 fax
cgeorge@wyrick.com

William E. Raney, MO #46954 (*pro hac vice to be submitted*)
Kellie J. Mitchell, MO #65573 *(pro hac vice to be submitted*)
Copilevitz & Canter, LLC
310 W. 20th Street, Suite 300
Kansas City, MO 64108
816-472-9000
816-472-5000 fax
braney@cckc-law.com
kmitchell@cckc-law.com

**ATTORNEYS FOR PLAINTIFFS**