## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| AMERICAN ASSOCIATION OF POLITICAL CONSULTANTS, INC., | ) ) ) |
| DEMOCRATIC PARTY OF OREGON, INC., | ) ) |
| PUBLIC POLICY POLLING, LLC, | ) ) |
| TEA PARTY FORWARD PAC, and | )          Civil Action No. 5:16-cv-00252-D ) |
| WASHINGTON STATE DEMOCRATIC CENTRAL COMMITTEE, | ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) ) |
| JEFFERSON SESSIONS, in his official capacity as Attorney General of the United States and | ) ) ) |
| FEDERAL COMMUNICATIONS COMMISSION, a federal agency, | ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES ............................................................................................... 3

I.  INTRODUCTION ...................................................................................................... 5

II.  SUMMARY OF THE CASE ................................................................................... 6

III.  STATEMENT OF FACTS ...................................................................................... 8

IV.  STANDARD OF REVIEW .................................................................................... 10

V.  LANGUAGE OF THE TCPA'S CELL PHONE CALL BAN .................................. 11

VI.  ARGUMENT ......................................................................................................... 14

   A.  **Strict scrutiny applies to content-based restrictions of speech.**................................... 15

   B.  **Defendants cannot satisfy strict scrutiny to justify the cell phone call ban.**............... 15

     1.  **The cell phone call ban is content based on its face.** ................................................. 16

     a.  **The cell phone call ban exempts certain types of calls based on the content of the calls.**......................................................................................................................................... 17

     b.  **The cell phone call ban exempts certain types of calls based on the identities of the callers.** ....................................................................................................................................... 18

     2.  **The cell phone call ban does not further a compelling governmental interest.**....... 18

     3.  **The cell phone call ban is not narrowly tailored to further a compelling governmental interest.**.................................................................................................... 20

     4.  **The cell phone call ban is not the least restrictive way to further a compelling governmental interest.**.................................................................................................... 21

   E.  **Plaintiffs are entitled to reasonable attorneys' fees if they prevail.** ............................ 23

VII.  CONCLUSION ...................................................................................................... 23

CERTIFICATE OF SERVICE ............................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986)................................................ 10, 11
*Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) ................................................................ 15
*Brown v. Hartlage*, 456 U.S. 45, 52-53 (1982)........................................................... 5, 20
*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S.
   598, 604-05, (2001) ..................................................................................................... 23
*Buckley v. Valeo*, 424 U.S. 1, 17-18 (1976).................................................................. 14
*Cahaly v. LaRosa*, 25 F. Supp. 3d 817, 824 (D.S.C. 2014) .......................................... 10, 11
*Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015).......................................................... passim
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ..................................................... 10
*Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 633 (4th Cir. 2016)........................ 20
*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010)........................ 14, 15, 24
*Connick v. Myers*, 461 U.S. 138, 145 (1983).............................................................. 14
*Couch v. Jabe*, 679 F.3d 197 (4th Cir. 2012).............................................................. 21, 22
*Daimler Trust v. Prestine Annapolis, LLC*, 2016 U.S. Dist. LEXIS 75014, at *20-21 (D. Md.
   June 7, 2016) .............................................................................................................. 23
*Dun & Bradstreet v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) ............... 14, 24
*Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)....................... 14, 20
*Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2000) ............... 15
*First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978) ..................................... 14
*Garrison v. La.*, 379 U.S. 64, 74-75 (1964).................................................................. 14
*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014)............................. 7
*Grissom v. The Mills Corp.*, 549 F.3d 313, 318 (4th Cir. 2008).................................. 23
*Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015).................................................................. 21, 24
*Md. v. Universal Elections, Inc.*, 729 F.3d 370, 376 (4th Cir. 2013)........................... 22
*Metromedia, Inc. v. City of S. Diego*, 453 U.S. 490, 513 (1981)................................. 15
*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012)............................................... 19
*Moser v. Fed. Commc'n Comm'n*, 46 F.3d 970, 973 (9th Cir. 1995)........................... 7
*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)............................................... 14
*Nat'l Fed'n of the Blind v. Fed. Trade Comm'n*, 420 U.S. 331, 333-34 (4th Cir. 2005) ............. 22
*Nat'l Prop. Investors v. Shell Oil Co.*, 950 F. Supp. 710 (E.D.N.C. 1996) .................. 10
*Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011) .......... 10
*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015)............................................... passim
*Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002)................................... 20
*Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985)......................... 11
*Rowen v. Post Office Dept.* 397 U.S. 728, 738 (1970) ................................................. 19
*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)............................................ 10
*United States v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000) ............................. 18
*Van Bergen v. Minn.*, 59 F.3d 1541, 1551 (8th Cir. 1995) .......................................... 22
*Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380 (N.D. Ga. 2013)..... 7

**Statutes**

105 Stat. 2394 ........................................................................................................... 18, 19
129 Stat. 588 ............................................................................................................. 13, 23
28 U.S.C. § 2412........................................................................................................ 23

47 U.S.C. § 227 ................................................................................................ passim
47 U.S.C. § 503 .................................................................................................... 9, 11
Internal Revenue Code § 501 ...................................................................................... 8
Internal Revenue Code § 527 ................................................................................... 8, 9
Pub. L. No. 114-74 .................................................................................................... 13
S.C. Code Ann. § 16-17-446(A) ............................................................................... 15

**Other Authorities**

77 Fed. Reg. 34233, 34235 (June 11, 2012) ...................................................... passim

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 31 FCC Rcd 5134, 5145 (May 6, 2016) ...................................................................... 6

*In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 30 FCC Rcd 7961, 8023 (July 10, 2015) .................................................................. passim

*In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 31 FCC Rcd 7394, 7400 (July 5, 2016) .................................................................. passim

*In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 7 FCC Rcd 8752, 8775 (Oct. 16, 1992) ...................................................................... 12

*In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling,* 29 FCC Rcd 3432, 3439 (Mar. 27, 2014) ................................................. passim

*In the Matter of GroupMe, Inc. / Skype Communications S.A.R.L.,* 29 FCC Rcd 3442, 3444 (Mar. 27, 2014) ...................................................................... passim

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.,* 30 FCC Rcd 7961, 8930-31 (July 10, 2015) ..................... passim

**Rules**

Fed. R. Civ. P. 25 ...................................................................................................... 7
Fed. R. Civ. P. 56 .................................................................................................... 10

**Regulations**

47 C.F.R. § 64.1200 ........................................................................................... passim

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................................... passim

# I.    INTRODUCTION

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).  Political discourse is of the highest value to society, and any limitation placed upon it comes with a heavy presumption of constitutional invalidity.  *See Brown v. Hartlage*, 456 U.S. 45, 52-53 (1982).

Consider two telephone calls.  The first is from a congresswoman to her constituents announcing a "telephone town hall" where she will take questions directly from voters, some who may support her and some who may oppose her.  This is direct participatory democracy accomplished by technology available for free or for very little cost to the citizen.

The second is a debt collection call from a third-party company which purchased a defaulted debt from the mortgage originator for pennies on the dollar, issued under a Federal Housing Administration guarantee.

One can debate the societal value of each of these calls, but it is undeniable that the first is political speech while the second is commercial speech.  The first call is banned by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq*., while the second call is allowed.

In this case, Plaintiffs are five organizations across the political spectrum which engage in political speech for both for profit and nonprofit activities.  They bring a facial constitutional challenge to 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA, which bans calls to cell phones or other numbers for which the called party is charged absent prior express consent (the "cell phone call ban").

The Federal Communications Commission ("FCC") has created exemptions to the cell phone call ban based on the content of the calls and the identities of the callers.  Through the years,

the pace of creation and number of these exemptions has increased culminating in Congress' creation of a statutory exemption for any person collecting a debt owed to or guaranteed by the United States.[1]

In 2016, FCC Chairman Ajit Pai discussed his concern with these exemptions:

> [T]he government is using the law to benefit politically favored constituencies. "The law" in this area used to mean one set of rules that applied equally to all. Now, the game has changed; "the law" nominally restricts everyone but singles out the few, the happy few, that band of robocallers, for special treatment.

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 31 FCC Rcd 5134, 5145 (May 6, 2016).

Because these exemptions are based on the content of the calls and the identities of the callers, this Court should evaluate the cell phone call ban as a content-based restriction of speech. The Court should apply strict scrutiny and find the cell phone call ban unconstitutional under the First Amendment of the U.S. Constitution.

The Fourth Circuit has recently ruled on a similar South Carolina statute which prohibited prerecorded political calls and held that the statute violated the First Amendment as a content-based restriction on speech that discriminated against some speakers but not others without a legitimate, neutral justification for doing so. *See Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015). The robocall ban did not survive strict scrutiny based on guidance from the Supreme Court. *See Reed*, 135 S. Ct. at 2218. The cell phone call ban is subject to the same analysis.

## II.      SUMMARY OF THE CASE

Plaintiffs American Association of Political Consultants, Inc. ("AAPC"), Democratic Party of Oregon, Inc. ("DPO"), Public Policy Polling, LLC ("PPP"), Tea Party Forward PAC ("TPF"),

---

[1] This exemption opened the statute to literally thousands of entities collecting mortgages, student loans, back taxes, and scores of other commercial debts.

and Washington State Democratic Central Committee ("WSDCC") (collectively "Plaintiffs") filed this lawsuit against Defendant Loretta Lynch,[2] in her official capacity as Attorney General of the United States, for declaratory judgment and preliminary and permanent injunctions to restrain Defendant from acting under color of law to deprive Plaintiffs of rights secured to them by the First Amendment to the U.S. Constitution.  Dkt. No. 1, ¶¶ 1-2.

In response, Defendant Lynch filed a motion to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.  *See* Dkt. Nos. 15 and 16.  Plaintiffs then filed their first amended complaint and added the FCC as a defendant.  *See* Dkt. No. 18.  Defendants subsequently filed a motion to dismiss Plaintiffs' first amended complaint for lack of subject-matter jurisdiction.  *See* Dkt. Nos. 22 and 23.

On March 15, 2017, this Court ruled that it has subject-matter jurisdiction over this claim, and Plaintiffs have standing to bring this constitutional challenge.  *See* Dkt. No. 26.

Plaintiffs allege the cell phone call ban violates the First Amendment because it is a content-based restriction of Plaintiffs' fully-protected political speech and cannot withstand strict scrutiny.  Dkt. No. 18, ¶ 2.  This case is a challenge to only the cell phone call ban, based on the litany of content-based exemptions to it created by Congress and the FCC.

Plaintiffs do not challenge the entirety of the TCPA,[3] nor are they challenging those exemptions.  *Id.* at ¶ 4.  The history of the FCC and Congress' creation of, and ability and intent to continue to create content-based exemptions to the cell phone call ban demonstrates that it is unconstitutional.  *Id.* at ¶ 3.

---

[2] On February 19, 2017, Jefferson Sessions assumed the position of Attorney General of the United States.  A public officer's "successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).
[3] While other courts have addressed the constitutionality of the TCPA, these cases challenged the entirety of the statute or did not consider the content-based exemptions challenged in this case.  *See e.g. Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Moser v. Fed. Commc'n Comm'n*, 46 F.3d 970, 973 (9th Cir. 1995); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380 (N.D. Ga. 2013).

Based upon a joint discovery plan and scheduling order (Dkt. No. 21), the Parties have agreed that it is appropriate for the Court to resolve this constitutional facial challenge on cross-motions for summary judgment. Plaintiffs now respectfully move this Court to grant it summary judgment for the following reasons.

## III.     STATEMENT OF FACTS

1.      Plaintiff AAPC is a bipartisan, nonprofit association of political professionals located in McLean, Virginia and organized under § 501(c)(6) of the Internal Revenue Code ("IRC"). AAPC provides education for its members and advocates for the protection of political free speech. AAPC members include political fundraisers, organizers, and persons who conduct and analyze political polls, i.e. political pollsters and opinion researchers. Dkt. No. 18, ¶ 8. AAPC members make calls to persons on their cell phones to solicit political donations and to discuss political and governmental issues. *Id.*

2.      Plaintiff DPO is located in Portland, Oregon and organized as a tax-exempt nonprofit organization under § 527 of the IRC. DPO works to promote the interests of the Democratic Party in the State of Oregon including coordinating, organizing and electing Democratic candidates. Dkt. No. 18, ¶ 9. DPO makes calls to registered Democratic and progressive non-affiliated voters on their cell phones to discuss political and governmental issues, give voters critical information to help them with the voting process, encourage voters to return their ballots by deadlines and vote for Democratic candidates, and solicit political donations. *Id.*

3.      Plaintiff PPP is a limited liability for-profit company located in Raleigh, North Carolina. PPP measures and tracks public opinion on candidates, campaigns, and other political issues with automated telephone surveys. Dkt. No. 18, ¶ 10. PPP makes calls to persons on their

cell phones on behalf of politicians, political organizations, unions, consultants, and other organizations. *Id*.

4. Plaintiff TPF is located in Alexandria, Virginia and organized as a tax-exempt nonprofit organization under § 527 of the IRC. Dkt. No. 18, ¶ 11. TPF works to promote the interests of the Tea Party by reforming political parties and government to advance the core principles of the Founding Fathers, recruiting Americans who share that same vision, and encouraging grassroots operations to vote and elect candidates who represent these ideals. *Id*. TPF makes calls to potential voters on their cell phones to solicit political donations and discuss political and governmental issues. *Id*.

5. Plaintiff WSDCC is the Democratic Party in the State of Washington and is located in Seattle, Washington. WSDCC is organized under § 527 of the IRC. Dkt. No. 18, ¶ 12. WSDCC works to elect Democrats, uphold Democratic values, and support Democrats across the state. WSDCC members include elected officials, candidates for office, activists, and voters. *Id*. WSDCC makes calls to registered voters on their cell phones to discuss political and governmental issues and to solicit political donations. *Id*.

6. Defendant Jefferson Sessions ("Attorney General") heads the United States Department of Justice ("DOJ") which is the agency in the United States government responsible for enforcement of federal law. Dkt. No. 18, ¶ 13; Dkt. No. 29, n.1. In his official capacity as Attorney General of the United States, he enforces the law complained of in this action. *Id*. Plaintiffs sue him in his official capacity. *Id*.

7. Defendant FCC is a part of the executive branch of the United States government responsible for promulgation of regulations under the TCPA and enforcement of its terms. 47 U.S.C. § 227(b)(2); 47 U.S.C. § 503(b); Dkt. No. 18, ¶ 14.

## IV.     STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Cahaly v. LaRosa*, 25 F. Supp. 3d 817, 824 (D.S.C. 2014), *aff'd in part, vacated in part* by *Cahaly*, 796 F.3d 399; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Nat'l Prop. Investors v. Shell Oil Co*., 950 F. Supp. 710 (E.D.N.C. 1996).

A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex,* 477 U.S. at 323.

Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477

U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985); *Cahaly*, 25 F. Supp. 3d at 824.

The Parties have agreed this suit presents a question of law to the Court and that it is ripe for review based on cross-motions for summary judgment.

## V.  LANGUAGE OF THE TCPA'S CELL PHONE CALL BAN

Plaintiffs challenge the constitutionality of the cell phone call ban, which provides that "[i]It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
> …
>
> (iii)  to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

The TCPA regulations define "emergency purposes" as "calls made necessary in any situation affecting the health and safety of consumers." *Id*. at (f)(4). "Automatic telephone dialing system" ("ATDS") means "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

The FCC, the states, through their attorneys general or otherwise, and private persons, including classes of persons, can sue for actual or statutory damages for violations of the cell phone call ban for $500 or more per telephone call. *Id*. at (b)(3), (g); 47 U.S.C. § 503.

The TCPA has given the FCC the authority to "prescribe regulations to implement the requirements of this subsection …." 47 U.S.C. § 227(b)(2). Regarding the implementation of the TCPA, the FCC stated the purpose of its regulations:

> The rules require that persons or entities making telephone solicitations establish procedures to protect residential subscribers from unwanted solicitations, and set forth exemptions to certain prohibitions under this part …. The rules are intended to impose reasonable restrictions on autodialed or prerecorded voice telephone calls consistent with considerations regarding public health and safety and commercial speech and trade, and to allow consumers to avoid unwanted telephone solicitations without unduly limiting legitimate telemarketing practices.

*In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd 8752, 8775 (Oct. 16, 1992).

The FCC and Congress have passed at least seven exemptions to the cell phone call ban which apply based on the content of the calls and the identities of the callers.

In 1992, the FCC exempted from the cell phone call ban prerecorded and ATDS calls by a wireless carrier to its customer when the customer is not charged. *Id*. (*reaff'd* by 77 Fed. Reg. 34233, 34235 (June 11, 2012) (the "wireless carrier exemption")).

In 2014, the FCC exempted from the cell phone call ban prerecorded and ATDS calls for "package delivery notifications to consumers' wireless phones either by voice or text … so long as those calls are not charged to the consumer recipient, including not being counted against the consumer's plan limits on minutes or texts, and comply with the conditions …." *In the Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling*, 29 FCC Rcd 3432, 3439 (Mar. 27, 2014) (the "package delivery exemption").

In 2014, the FCC exempted from the cell phone call ban prerecorded and ATDS "non-telemarketing voice calls or text messages to wireless numbers … [that] rely on a representation from an intermediary that they have obtained the requisite consent from the consumer." *In the*

*Matter of GroupMe, Inc. / Skype Communications S.A.R.L.*, 29 FCC Rcd 3442, 3444 (Mar. 27, 2014) (the "intermediary consent exemption").

In 2015, the FCC exempted from the cell phone call ban prerecorded and ATDS "non-telemarketing, healthcare calls that are not charged to the called party" and "for which there is exigency and that have a healthcare treatment purpose …." *In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd 7961, 8030-31 (July 10, 2015) (the "HIPAA exemption").

In 2015, the FCC exempted from the cell phone call ban prerecorded and ATDS calls regarding "(1) 'transactions and events that suggest a risk of fraud or identity theft; (2) possible breaches of the security of customers' personal information; (3) steps consumers can take to prevent or remedy harm caused by data security breaches; and (4) actions needed to arrange for receipt of pending money transfers.'" *In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd 7961, 8023 (July 10, 2015) (the "bank and financial exemption").

In 2015, Congress exempted from the cell phone call ban prerecorded and ATDS calls "made solely to collect a debt owed to or guaranteed by the United States". Pub. L. No. 114-74 § 301(a), 129 Stat. 588 (amending 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii)) (the "debt collection exemption").

In 2016, the FCC exempted from the cell phone call ban prerecorded and ATDS calls from federal government officials conducting official business. *In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd 7394, 7400 (July 5, 2016) (the "official federal government business exemption").

The history of the FCC and Congress' creation of, and ability and intent to continue to create, content-based exemptions to the cell phone call ban demonstrates that it is unconstitutional.

## VI.    ARGUMENT

The cell phone call ban is contrary to the protections afforded to political speech by the First Amendment.  "[S]peech on 'matters of public concern' … is 'at the heart of the First Amendment's protection.'"  *Dun & Bradstreet v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (quoting *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978)).

The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  This is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. La.*, 379 U.S. 64, 74-75 (1964). Consequently, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted).

The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (internal quotation marks omitted).  For these purposes, financial contributions count as speech. *Buckley v. Valeo*, 424 U.S. 1, 17-18 (1976).  Thus, strict scrutiny applies. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010).

The cell phone call ban applies based on the content of the calls and the identities of the callers.  As such, it is a content-based restriction of speech subject to strict scrutiny.  It is constitutional only if the government can prove it is narrowly tailored to further a compelling governmental interest by the least restrictive means available.

Further, because the cell phone call ban favors commercial speech over Plaintiffs' fully protected political speech, it is unconstitutional.  *Metromedia, Inc. v. City of S. Diego*, 453 U.S.

490, 513 (1981). "[O]ur recent commercial speech cases have consistently accorded non-commercial speech a greater degree of protection than commercial speech. San Diego effectively inverts this judgment, by affording a greater degree of protection to commercial than to non-commercial speech." *Id*.

The Fourth Circuit's decision in *Cahaly* similarly ruled that South Carolina's robocall ban was unconstitutional and violated the First Amendment. *See Cahaly*, 796 F.3d 399. The statute banned unsolicited prerecorded calls including "automatically announced calls of a political nature including, but not limited to, calls relating to political campaigns." *Id*. at 402; S.C. Code Ann. § 16-17-446(A).

While the statute provided three exceptions based on the "express or implied consent" of the called party, the Fourth Circuit concluded that the statute could not survive strict scrutiny as it was a content-based restriction on speech that discriminated against some speakers but not others without a legitimate, neutral justification for doing so. *Id*. at 407. The cell phone call ban is subject to the same analysis.

### A. Strict scrutiny applies to content-based restrictions of speech.

Courts must apply strict scrutiny to content-based restrictions of speech. *Citizens United*, 558 U.S. at 339. This requires "the government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id*. (citing *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2000)). *See Cahaly v. LaRosa*, 796 F.3d 399. Strict scrutiny requires that the government use the "least restrictive means" available among effective alternatives to accomplish its legitimate goal. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

### B. Defendants cannot satisfy strict scrutiny to justify the cell phone call ban.

Strict scrutiny applies both when a law is content based on its face or when the purpose and justification for the law are content based. *Cahaly*, 796 F.3d at 405. A court must evaluate each question before it concludes that the law is content neutral and subject to a lower level of scrutiny. *Id*.

### 1. The cell phone call ban is content based on its face.

A statute is content based because (1) on its face it "draws distinctions based on the message a speaker conveys" or (2) it is facially content neutral but cannot "be justified without reference to the content of the regulated speech" or it was "adopted by the government because of disagreement with the message the speech conveys." *Reed*, 135 S. Ct. at 2227 (internal citations omitted).

In *Cahaly,* the court ruled "'the crucial first step in the content-neutrality analysis' is to 'determine whether the law is content neutral on its face.'" *Cahaly*, 796 F.3d at 405 (citing *Reed*, 135 S. Ct. at 2228). If a law is content neutral on its face, a court proceeds to a second step to determine the justification of the entity which passed the law. *Id*. A law could still be content based if the text was content neutral if the restriction was "adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id*.; *see also Reed*, 135 S. Ct. at 2227.

But if a statute makes separate distinctions in application based on the content of speech or the identity of the speaker, the motive of the government in making the restriction is irrelevant. *Id*. In *Reed*, the Supreme Court stated:

> A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of "animus toward the ideas contained" in the regulated speech. *Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 429. We have thus made clear that "'[i]llicit legislative intent is not the *sine qua non* of a violation of the First Amendment,'" and a party opposing the government "need adduce 'no evidence of an improper censorial motive.'" *Simon & Schuster, supra,* at 117, 112 S. Ct. 501. Although "a content-based purpose may be sufficient in certain circumstances to show that a regulation

is content based, it is not necessary." *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 642. In other words, an innocuous justification cannot transform a facially content-based law into one that is content neutral.

*Reed*, 135 S. Ct. at 2228. In reliance on *Reed*, the *Cahaly* court held the statute at issue was subject to strict scrutiny and concluded that "we find that South Carolina's anti-robocall statute is content-based because it makes content distinctions on its face." *Cahaly*, 796 F.3d at 405.

Similarly, the FCC and Congress' creation of exemptions to the cell phone call ban based on the content of the calls and the identities of the callers makes the government's motive in making the restriction irrelevant. The cell phone call ban is content based on its face.

> **a.** **The cell phone call ban exempts certain types of calls based on the content of the calls.**

As explained in *supra* Part V, the FCC and Congress have passed exemptions to the cell phone call ban which apply based on the content of the speech. Based upon these exemptions, calls which include the following speech are more worthy than Plaintiffs' political speech:

- package delivery notifications in the package delivery exemption, *see* 29 FCC Rcd at 3439;

- healthcare-related calls in the HIPAA exemption, *see* 30 FCC Rcd at 8030-31;

- fraud, security and money transfer notifications in the bank and financial exemption, *see id.* at 8023;

- debts owed to or guaranteed by the United States in the debt collection exemption, *see* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); and

- official federal government business in the official federal government business exemption, *see* 31 FCC Rcd at 7400.

Because the cell phone call ban applies to Plaintiffs' political speech but exempts these types of calls, it is a content-based restriction on speech and subject to strict scrutiny.

### b. The cell phone call ban exempts certain types of calls based on the identities of the callers.

Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles. *See United States v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000).

The FCC and Congress have passed exemptions to the cell phone call ban which apply based on the identities of the callers. Based upon these exemptions, calls made by the following speakers are more worthy than Plaintiffs' political speech:

- calls made by wireless carriers in the wireless carrier exemption, *see* 77 Fed. Reg. at 34235;

- calls made by intermediaries in the intermediary consent exemption, *see* 29 FCC Rcd at 3444; and

- calls made by federal government officials in the official federal government business exemption, *see* 31 FCC Rcd at 7400.

Because the cell phone call ban applies to Plaintiffs' political speech but exempts calls from the above types of speakers, it is a content-based restriction on the identities of the callers and subject to strict scrutiny.

### 2. The cell phone call ban does not further a compelling governmental interest.

Congress passed the TCPA in 1991 to protect residential telephone subscribers' privacy rights in connection with commercial telephone solicitations. *See* 105 Stat. 2394. In doing so, Congress found that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety …. Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade

must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." *Id.*

The Supreme Court has reviewed Congress' findings in passing the TCPA. In *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), Justice Ginsburg found that Congress determined that "automated or prerecorded telephone calls made to private residences … were rightly regarded by recipients as an invasion of privacy." *Id.* at 372 (internal citations omitted) (citing 105 Stat. 2394). Justice Ginsburg noted that the TCPA principally outlaws four practices, including:

> [1] to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call …. [2] using artificial or prerecorded voice messages to call residential telephone lines without prior express consent …. [3] sending unsolicited advertisements to fax machines …. [and 4] using automatic telephone dialing systems to engage two or more of a business's telephone lines simultaneously.

*Id.* at 373.

The *Cahaly* court also noted that the asserted government interest behind South Carolina's robocall ban was "to protect residential privacy and tranquility from unwanted and intrusive robocalls." *Cahaly*, 796 F.3d at 405. The Fourth Circuit assumed that this interest was compelling. *Id.*; *see Rowen v. Post Office Dept.* 397 U.S. 728, 738 (1970).

While protection of residential privacy is a compelling governmental interest, the cell phone call ban is not related to this interest. If so, the FCC and Congress would not create exemptions for calls made by wireless carriers, package delivery companies, third-party-intermediaries, healthcare companies, financial institutions, certain debt collectors, and calls relating to federal government business. *See* 77 Fed. Reg. at 34235; 29 FCC Rcd at 3439; 29 FCC Rcd at 3444; 30 FCC Rcd at 8030-31; 30 FCC Rcd at 8023; 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); 31 FCC Rcd at 7400.

These exemptions to the cell phone call ban show that the government's actual interest behind the cell phone call ban is to favor certain speakers and content over that of Plaintiffs and similarly situated speakers.

> **3.** **The cell phone call ban is not narrowly tailored to further a compelling governmental interest.**

To satisfy strict scrutiny, Defendants have the burden to prove that the cell phone call ban is narrowly tailored to further a compelling governmental interest. *See e.g.*, *Eu*, 489 U.S. at 222.

In order for Defendants to show that the cell phone call ban is narrowly tailored, they must demonstrate that it is not overinclusive or "unnecessarily circumscribe[s] protected expression." *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002) (citing *Brown*, 456 U.S. at 54).

Nor can the cell phone ban be underinclusive. *Id*. at 780. A regulation is fatally underinclusive if it "leaves appreciable damage to that supposedly vital interest unprohibited." *Id*. In *Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 633 (4th Cir. 2016), the Fourth Circuit considered a sign code enacted to promote the city's "physical appearance" and to reduce distractions, obstructions, and hazards to pedestrian and traffic. *Id*. The court ruled these were substantial government goals, but not compelling, and that the "city has failed to show that its restrictions were narrowly tailored to serve those interests." *Id*. at 634. The Fourth Circuit concluded the city's exemptions from the sign code were "hopelessly underinclusive." *Id*.

*Cahaly* also noted the South Carolina robocall ban was both overinclusive and underinclusive. *Cahaly*, 796 F.3d at 406. The South Carolina statute was overinclusive because it targeted political calls when consumer complaints overwhelmingly involve commercial calls. *Id*. The statute was underinclusive because it restricted political and consumer robocalls but permitted "unlimited proliferation" of other types of calls causing the same problem. *Id*. The

court held the South Carolina robocall ban was not narrowly tailored to further the assumed compelling interest of residential privacy. *Id.*

The cell phone call ban is similarly overinclusive because is prohibits ATDS or prerecorded calls consumers desire, expect, or benefit from, such as "get out the vote" calls, survey and other important informational calls, and voter registration drives.

The cell phone call ban is also underinclusive because it restricts ATDS or political prerecorded calls but permits less protected speech such as calls made by wireless carriers, package delivery companies, third-party-intermediaries, health care companies, financial institutions, certain debt collectors, and calls relating to federal government business. *See* 77 Fed. Reg. at 34235; 29 FCC Rcd at 3439; 29 FCC Rcd at 3444; 30 FCC Rcd at 8030-31; 30 FCC Rcd at 8023; 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); 31 FCC Rcd at 7400.

Because the cell phone call ban is not narrowly tailored to serve a compelling governmental interest, it cannot survive strict scrutiny and is a violation of the First Amendment.

> ### 4. The cell phone call ban is not the least restrictive way to further a compelling governmental interest.

Defendants are also required by the strict scrutiny test to show that the cell phone call ban is the least restrictive means available to achieve its purported interest. *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015).

In *Couch v. Jabe*, 679 F.3d 197 (4th Cir. 2012), the Fourth Circuit reviewed a case alleging that prison officials infringed on a prisoner's constitutional right of freedom of religion by refusing to let the prisoner, a Sunni Muslim, grow a one-eighth inch beard in compliance with the requirements of his faith. *Id*. at 199.

The court found that prison officials did not explain how the one-eighth inch beard would implicate health or security concerns and noted that prisoner officials "failed to indicate any

consideration of whether [the prisoner's] proposed alternative might be equally as successful as the Policy in furthering the identified compelling interests …." *Id.* at 204.

Because the prison officials failed to satisfy their burden to show that the general grooming policy they relied upon was the least restrictive means of furthering a compelling government interest, the court vacated summary judgment in favor of the prison officials. *Id.*

In the context of the TCPA, the Fourth Circuit has noted that plausible less restrictive calling restriction alternatives include time-of-day limitations, mandatory disclosure of the caller's identity, or "do-not-call" lists. *See Cahaly*, 796 F.3d at 405; *Md. v. Universal Elections, Inc.*, 729 F.3d 370, 376 (4th Cir. 2013) (evaluating the TCPA's identity disclosure requirement); *see also Nat'l Fed'n of the Blind v. Fed. Trade Comm'n*, 420 F.3d 331, 333-34 (4th Cir. 2005) (examining a federal regulation that "requires callers to make certain disclosures, refrain from making late-night, early-morning, and 'abandoned calls' (calls followed by silence), and comply with a …'do-not-call list'"); *Van Bergen v. Minn.*, 59 F.3d 1541, 1551 (8th Cir. 1995) (considering Minnesota's ban on robocalls during certain time periods). In *Cahaly*, the court further noted that "[t]he government has offered no evidence showing that these alternatives would not be effective in achieving its interest." *Cahaly*, 796 F.3d at 405-06.

Similar to the above analysis regarding narrow tailoring, the FCC and Congress have numerous less restrictive, non-content-based alternatives available to protect residential privacy, including time of day limitations, "do-not-call" lists, and disclosure requirements. *Id.* There is no evidence in the record that these alternatives would be ineffective in achieving this interest.

Nor has the FCC or Congress even contemplated other less restrictive ways to address its privacy concerns when it enacted the FCC exemptions and the amendment to the cell phone call

ban. *See* 77 Fed. Reg. at 34235; 29 FCC Rcd at 3435-39; 29 FCC Rcd at 3444-45; 30 FCC Rcd at 8030-32; 30 FCC Rcd at 8023-28; 129 Stat. 588; 31 FCC Rcd at 7401-06.[4]

As the cell phone call ban is not the least restrictive way to further a compelling government interest, it fails to survive strict scrutiny. The cell phone call ban is unconstitutional under the First Amendment of the U.S. Constitution.

### E.     Plaintiffs are entitled to reasonable attorneys' fees if they prevail.

To the extent required by law, Plaintiffs provide notice that they intend to move for an award of reasonable attorneys' fees and costs if they are the prevailing party in this matter. *See* 28 U.S.C. § 2412.

The term "prevailing party" means that a plaintiff must achieve a "material alteration of the legal relationship of the parties" and there must be "judicial *imprimatur* on the change." *Daimler Trust v. Prestine Annapolis, LLC*, 2016 U.S. Dist. LEXIS 75014, at *20-21 (D. Md. June 7, 2016) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604-05, (2001)); *see also Grissom v. The Mills Corp.*, 549 F.3d 313, 318 (4th Cir. 2008).

Should the Court determine the cell phone call ban is unconstitutional, it should therefore find Plaintiffs to be the prevailing party and award them reasonable attorneys' fees.

## VII.   CONCLUSION

The outcome of this motion rests on the fact that the cell phone call ban is contrary to the protections afforded to political speech by the First Amendment to the U.S. Constitution. *Dun &*

---

[4] There is no evidence in these orders that that the FCC or Congress considered alternative calling restrictions in lieu of these exemptions. *See Cahaly*, 796 F.3d at 405-06 "[t]he government has offered no evidence showing that these alternatives would not be effective in achieving its interest."

*Bradstreet*, 472 U.S. at 758-59. The FCC and Congress have created exemptions to the cell phone call ban based on the content of the calls and the identities of the callers.

The cell phone call ban violates the First Amendment as a content-based restriction on speech that discriminates against some speakers but not others without a legitimate, neutral justification for doing so. *See Cahaly*, 796 F.3d 399.

Courts must apply strict scrutiny to content-based restrictions of speech. *Citizens United*, 558 U.S. at 339. But the government has failed to prove that the cell phone call ban is narrowly tailored to further a compelling governmental interest and is the least restrictive means available to achieve its purported interest. *Holt*, 135 S. Ct. at 863.

The cell phone call ban cannot survive strict scrutiny and is therefore unconstitutional. *See Reed*, 135 S. Ct. 2218. As there is no genuine dispute of material fact, Plaintiffs are entitled to judgment as a matter of law.

Dated: May 19, 2017                     Respectfully Submitted,

                                         /s/ *Charles George*

                                        WYRICK ROBBINS YATES & PONTON LLP
                                        Charles George, NC #21003
                                        4101 Lake Boone Trail, Suite 300
                                        Raleigh, North Carolina 27607
                                        Telephone: (919) 781-4000
                                        Facsimile: (919) 781-4865
                                        Email: cgeorge@wyrick.com

                                        -and-

                                         /s/ *William E. Raney*

                                        COPILEVITZ & CANTER, LLC
                                        William E. Raney, MO #46954 (*Pro hac vice*)
                                        Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice*)
                                        310 W. 20th Street, Suite 300

Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email: braney@cckc-law.com
        kmitchell@cckc-law.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on the following parties via the Court's CM/ECF electronic filing system, or if the party does not participate in Notice of Electronic Filing, via U.S. mail, postage prepaid, on this 19th day of May 2017, to:

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, District of Columbia 20530-0001

Civil Process Clerk
Office of the United States Attorney
Eastern District of North Carolina
310 New Bern Avenue
Federal Building, Suite 800
Raleigh, North Carolina 27601-1461

  /s/ *William E. Raney*
William E. Raney
