UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN ASSOCIATION OF | ) | |
| POLITICAL CONSULTANTS, INC., | ) | |
| | ) | |
| DEMOCRATIC PARTY OF OREGON, INC., | ) | |
| | ) | |
| PUBLIC POLICY POLLING, LLC, | ) | |
| | ) | |
| TEA PARTY FORWARD PAC, and | ) | Civil Action No. 5:16-cv-00252-D |
| | ) | |
| WASHINGTON STATE DEMOCRATIC | ) | |
| CENTRAL COMMITTEE, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFERSON SESSIONS, in his official capacity | ) | |
| as Attorney General of the United States and | ) | |
| | ) | |
| FEDERAL COMMUNICATIONS | ) | |
| COMMISSION, a federal agency, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE AND REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

1

**I.     INTRODUCTION**

Please consider once more two telephone calls.  The first is from the Democratic Party urging residents of a given district to vote in the upcoming election.  A volunteer makes the call using an automatic telephone dialing system ("ATDS") to a voter, but the volunteer doesn't know that the number called is a cell phone.  The second is from a debt collector to a debtor concerning a defaulted government-backed mortgage.  This call is also placed using an ATDS, and the only number available is a cell phone number.

The first call is banned by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) (the "cell phone call ban").  The second call is not.[1]  The exempt debt collection call has a significant effect on the privacy of the recipient, but it seems likely that the first call would be more welcomed by the recipient.  The TCPA cell phone call ban is therefore a content-based restriction of speech, subject to strict scrutiny under the First Amendment.  It cannot withstand strict scrutiny and is therefore unconstitutional.

**II.    ARGUMENT**

When Congress passed the TCPA, it gave the Federal Communications Commission ("FCC") power to create exemptions to its restrictions, including to the TCPA cell phone call ban.  Since 1992, the FCC has created seven exemptions to the TCPA cell phone call ban.

Congress also has the power to create exemptions to the cell phone call ban.  It has done so, for example by including an exemption for any entity placing calls solely collecting debt owed to or guaranteed by the federal government.

---

[1] See discussion of *Brickman v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 11849 (N.D. Cal. Jan. 27, 2017) ("*Brickman*") and the cell phone call ban debt collection exemption, *infra* at B1.

By creating this exemption based on the content of the speech, Congress has caused the TCPA cell phone call ban to be a content-based restriction of speech. The FCC, in including exemptions based on the content of speech and the identity of speakers, has also caused the cell phone call ban to be a content-based restriction of speech.

Further, because Congress and the FCC have the power to create future content-based exemptions, the TCPA cell phone call ban cannot be cured of its unconstitutionality by striking those exemptions. Congress and the FCC would still have the power, which they have used and likely intend to use in the future, to create content-based exemptions. Under this Circuit's ruling in *Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015) ("*Cahaly*"), the cell phone call ban cannot withstand strict scrituny and is therefore unconstitutional.

A. **Defendants cannot distinguish *Reed*, as it is undisputed that the exemptions apply based on the content of speech.**

Defendants attempt to distinguish *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ("*Reed*") by claiming that "the lines drawn by the TCPA in no way resemble the lines drawn by the ordinance invalidated in *Reed*." Defs.' Brief at 9. That statute was "riddled" with 23 exemptions (here we have seven). *Id.* The statute also applied different rules based on the content of signs, e.g. "political" signs subject to one rule, "ideological" signs to another. *Id.*

The TCPA cell phone call ban, Defendants argue, is different because it was designed by Congress to protect residential "privacy interests" instead of aesthetic ones. *Id.* at 10.

The language of *Reed* does not tolerate such an argument and gives no indication that its analysis hinges on the differences between residential "privacy interests" and "aesthetic interests". Rather, under *Reed,* if a statute draws distinctions based on the content of the speech regulated, it is content-based and thus subject to strict scrutiny. Because the TCPA cell phone call ban draws distinctions based on the message a speaker conveys (or the identity of the speaker), and not just

3

the relationship between the speaker and the recipient, it is a content-based restriction on free speech subject to strict scrutiny. *Reed* at 2227. The purpose behind the statute, of course, is relevant to whether the statute passes strict scrutiny—not whether *Reed* applies or not. *Reed* noted:

> a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem "entirely reasonable" will sometimes be "struck down because of their content-based nature."

*Id*. at 2231 (citing *City of Ladue* v. *Gilleo*, 512 U.S. 43, 60 (1994) (O'Connor, J., concurring)).

The rule is the same in this Circuit:

> In evaluating the content neutrality of a sign regulation restricting speech, we focus on the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). We recently observed that this decision conflicted with, and therefore abrogated, our Circuit's previous formulation for analyzing content neutrality, in which we had held that "[t]he government's purpose is the controlling consideration."

*Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 632 (4th Cir. 2016) (quoting *Cahaly* at 405).

Defendants claim "[t]he TCPA restricts only calls made and messages sent without consent, *see* 47 U.S.C. § 227(b)(1)(A) …." Defs.' Brief at 11. This is wrong. Defendants' error is the entire point of this lawsuit—the content-based exceptions to the TCPA specified in the complaint show that some calls are banned without consent, but some calls from favored speakers or with favored content are allowed with or without consumer consent. Hence, the statute is content-based.

### 1. Congress has given the FCC the power to create content-based exemptions.

The authority granted by Congress to the FCC to create exemptions, including content-based exemptions, is found in the TCPA at 47 U.S.C. § 227(b)(2):

> The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission— …

4

(C) may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect;

*Id.*

Severing the existing exemptions will not prevent the FCC from adopting new content-based exemptions in the future.

### 2. The FCC has exercised its power to create content-based exemptions.

Defendants attempt to argue that the FCC's content-based exemptions "are not actually exemptions at all." Defs.' Brief at 14. But whether by FCC order, interpretation, or otherwise, some speakers' calls are exempt based on the speakers' identity or the content of the calls, and some are not. The provisions of the First Amendment are not so easily evaded. Governmental restraint on speech need not fall into familiar or traditional patterns to be subject to constitutional limitations. *Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 256 (1974) (citing *Grosjean v. American Press Co.*, 297 U.S. 233, 244-45 (1936)).

The FCC has created exemptions that favor certain speakers over others, including:

- calls made by wireless carriers in the wireless carrier exemption, *see* 77 Fed. Reg. at 34235;

- calls made by intermediaries in the intermediary consent exemption, *see* 29 FCC Rcd at 3444; and

- calls made by federal government officials in the official federal government business exemption, *see* 31 FCC Rcd at 7400.

Ptfs.' Brief in Support of Motion for Summ. J., Dkt. 31 (May 19, 2017) ("Ptfs.' Brief") at 18.

The FCC has also created exemptions that favor certain messages with certain content over others, including:

- package delivery notifications in the package delivery exemption , *see* 29 FCC Rcd at 3439;
- healthcare-related calls in the HIPAA exemption, *see* 30 FCC Rcd at 8030-31;
- fraud, security and money transfer notifications in the bank and financial exemption, *see id.* at 8023; and
- official federal government business in the official federal government business exemption, *see* 31 FCC Rcd at 7400.

Ptfs.' Brief at 17.

There is no reason to believe the FCC will refrain from creating future content-based exemptions, by order, interpretation, or otherwise.

### 3. Congress believes it has the power to create content-based exemptions.

Congress, similarly, believes it has the power to create content-based exemptions favoring certain speakers or messages.

Despite claims of Defendants, the debt collection exemption is not limited to calls to debtors of government or government backed debts. Pub. L. No. 114-74, 129 Stat. 584 (Nov. 2, 2015) at § 301(a), *Brickman* at *26.

Congress knew how to limit the TCPA's application in some respects to calls to certain people. For example, the "established business relationship" is part of an exemption to the national "do-not-call" list. It is specifically limited to a relationship between a caller and a specific residential subscriber.

> The term "established business relationship", for purposes only of subsection (b)(1)(C)(i), shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003, except that--
>
>> (A) such term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber; and
>>
>> (B) an established business relationship shall be subject to any time limitation established pursuant to paragraph (2)(G)[)].

47 U.S.C. § 227(a)(2).

> The FCC's regulation then specifies that an established business relationship means:
>
> a prior or existing relationship formed by a <u>voluntary two-way communication between a person or entity and a residential subscriber</u> with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party…

47 C.F.R. § 64.1200(f)(5) (emphasis added).

The debt collection exemption contains no such limitation to calls to a specific person (e.g. the debtor) and could apply to any call to any person, so long as the call is made solely to collect a government or government backed debt, e.g. employment verification, asset location, etc. There are likely tens of thousands of companies that issue government backed debt, including small business loans, student loans, mortgages, etc. These companies' collection calls are allowed, while other debt collectors' calls are banned, as are the fully-protected political calls placed by Plaintiffs.

### 4. Severing the existing exemptions does not cure this problem.

Severance of the content-based exemptions as Defendants' argue is not a suitable cure for the cell phone call ban's unconstitutionality. *See* Defs.' Brief at 17-20. Severance does not solve

7

the problem of the FCC and Congress's existing and actualized ability to create future content-based exemptions.

Congress's ability to amend the TCPA is ongoing. Congress has amended the TCPA six times since it was first passed in 1991, Pub. L. No. 102-243 (Dec. 20, 1991), most recently creating the debt collection exemption to the cell phone call ban as part of the Bipartisan Budget Act of 2015 Pub. L. No. 114-74 (Nov. 2, 2015). As explained, Congress has given the FCC power to create future exemptions. *See* 47 U.S.C. § 227(b)(2).

Severance of the existing content-based exemptions would not cure the cell phone call ban's unconstitutionality and contradicts long-standing First Amendment jurisprudence that more speech, rather than less speech, is the goal of this constitutional protection. *See Whitney v. Cal.*, 274 U.S. 357 (1927). "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *Id*. at 377.

The proper remedy is to allow more speech and speakers by striking the cell phone call ban and allowing the FCC or Congress to use other narrowly tailored, or content-neutral, means to protect residential privacy.

> **B.** **Defendants rely on TCPA cases which did not consider its exemptions or are otherwise distinguishable.**
>
>> **1.** **Other cases involved challenges to the whole statute, not merely the cell phone call ban.**

Although Defendants rely on some cases which comment on the constitutionality of the TCPA, they involved challenges to other sections of the law, predate *Reed*, or did not consider the exemptions to the cell phone call ban involved in this case.

>> **a.** ***Gomez v. Campbell-Ewald Co.***

While *Gomez v. Campbell-Ewald*, 768 F.3d 871 (9th Cir. 2014) ruled the TCPA was a reasonable time, place, and manner restriction, the case did not consider the exemptions to the cell phone call ban highlighted in this matter. Nor did the case apply the logic of *Reed* to the TCPA as it had not been decided at the time of the 9th Circuit's decision and because the exemptions were not discussed. *Id*. at 873.

### b. *Moser v. Fed. Commc'n Comm'n*.

*Moser v. Fed. Commc'n Comm'n*, 46 F.3d 970 (9th Cir. 1995) involved a challenge to the general ban on most prerecorded telephone calls to residential telephone lines found in the TCPA. *See* 47 U.S.C. § 227(b)(1). Calls by tax exempt nonprofit organizations were exempt from the ban based on FCC regulations adopted on September 17, 1992. *Id*. at 973. *Moser* concluded the restriction was content-neutral, but the case predates *Reed* and considered a restriction that did not have voluminous content-based and speaker identity based exemptions that post-dated its decision but which are found in this case.

### c. *Brickman v. Facebook, Inc.*

Defendants rely extensively on *Brickman* to the extent it ruled the government debt collection exemption may be severable, but Defendants simultaneously disagree with *Brickman,* claiming the exemption is limited because "such calls would only be made to those who owe a debt to the federal government." Defs.' Brief at 18, 25 (citing *Brickman* at *8).

This ignores the text of the exemption. Congress inserted the language "unless such call is made solely to collect a debt owed to or guaranteed by the United States" after "charged for the call" in the cell phone call ban. Pub. L. No. 114-74 amending 47 U.S.C. § 227(b)(1).

In no way is this language limited to calls to debtors or calls by the Government. Calls could be made to acquaintances of debtors, employers, or numerous other persons from whom

9

private debt collectors must collect government debt. Defendant's discussion at n. 8 belies the plain language of the statute, which is not limited to calls to the debtor or "those who have a legal relationship to the debt." Defs.' Brief at 19, n.8. Many calls could have a sole purpose to collect a debt, yet not be to the debtor.

*Brickman* did not consider any of the FCC enacted content-based exemptions to the TCPA when it concluded "the TCPA's exemptions leave negligible damage to the statute's interest in protecting privacy." *Id*. at *27. To the contrary, the exemptions show substantial favoring of commercial speech over Plaintiffs' fully protected speech, allowing thousands of commercial debt collectors to place calls to debtors and other persons relating to collection of that debt, allowing package shippers to call any recipient of packages regardless of relationship with the sender of the package or the shipper, and allowing cell phone companies to contact customers for any purpose, including sales, political advocacy, etc. The exemptions show favoring of some debt collection calls over others despite them having an identical effect on residential privacy. The exemptions show that wireless carriers can contact their customers for sales purposes, or any other purposes, while other companies cannot make similar sales calls to their customers.

Surely these calls cause at least the same, if not more, intrusion into consumers' privacy than a 'get out the vote' or political polling call.

When Congress intended the communication to involve a relationship solely with a customer, it defined it as such, e.g. established business relationship. 47 U.S.C. § 227(a)(2).

Nor is the government debt exemption solely related to government speech as Defendants argue. Defs.' Brief at 25. Government backed debt includes mortgages and student loans, as well as debts owed directly to the government, such as taxes. Numerous corporate entities issue and

10

own mortgages and student loans, and those who call seeking to collect those debts are not government actors such that the speech is government speech.

Further, simply because a debt is backed by the government, it does not necessarily follow that collection calls by a commercial entity collecting that debt are "government speech". Such an argument would mean that any marketer of student loans or government backed mortgages was exempt from the TCPA, the Telemarketing Sales Rule ("TSR"), or Federal Trade Commission jurisdiction, etc. This simply cannot be the case. *See* e.g. *United States v. Mortgage Investors Corp. of Ohio*, No. 13-cv-01647 (M.D. Fla. July 17, 2013) (lawsuit against seller of Veterans Administration guaranteed loans), attached hereto as Exhibit A.

Finally, the TCPA cell phone call ban is underinclusive, and therefore not narrowly tailored to further residential privacy. Because the debt collection exemption applies to collectors of government backed debt and not collectors of other debt, the TCPA cell phone call ban cannot be narrowly tailored to further residential privacy. For example, one debt collection call to collect a defaulted Federal Housing Authority loan would be legal, but another, from the exact same lender to the same debtor collecting a defaulted conventional loan would be illegal. This underinclusive dichotomy shows the true purpose of the ban is to favor some speech over other speech—the very ill strict scrutiny and First Amendment jurisprudence exist to combat.

    **2. Other district court cases relied upon by Defendants are distinguishable from this challenge.**

    **a.** *Mey v. Venture Data, LLC*

The ruling in *Mey v. Venture Data, LLC*, 2017 WL 1193072 (N.D. W.V. Mar. 29, 2017), is based on an erroneous assumption and is distinguishable from this case.

First, the court concluded that "[t]he TCPA is a permissible content-neutral regulation on its face" based on the incorrect notion that the statute "broadly limits 'any person' from using an

11

[ATDS] or an artificial or prerecorded voice 'to make any call' to a cellular telephone line." *Id*. at *17. Addressing the statutory exemptions, the court held that all three exceptions[2] were not content-based but based on the relationship of the speaker and the recipient of the message. *Id*.

But this is incorrect. The TCPA exempts calls made "solely to collect a debt owed to or guaranteed *by the United States*." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). If this exemption were based only on the relationship of the speaker and the recipient of the message, it would include all calls to collect a debt, not just those owed to or guaranteed by the United States. The debt collection exemption favors calls from some speakers that include certain content, i.e. government-back debt only, while prohibiting calls from other debt collectors.

The court's argument that *Cahaly* is distinguishable similarly fails. *Mey* relies on the fact that the South Carolina statute expressly makes facial content distinctions, *see* S.C. Code Ann. § 16-17-446(A), and by contrast, states that the TCPA does not "target" political speech or any other type of speech on its face. *Mey*, 2017 WL 1193072 at *17. But the statutory exemption for calls made "solely to collect a debt owed to or guaranteed *by the United States*" shows this is incorrect. *See United States v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000) ("Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles.").

Similarly, *Mey* fails to address the FCC's exemptions that favor certain messages with certain content, i.e. calls made by wireless carriers, package delivery companies, third-party-intermediaries, health care companies, financial institutions, certain debt collectors, and calls relating to federal government business. *See* 77 Fed. Reg. at 34235; 29 FCC Rcd at 3439; 29 FCC

---

[2] The TCPA generally applies to all calls with three exceptions: (1) calls "for emergency purposes;" (2) calls made "with the prior express consent of the called party;" and (3) calls made "to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A).

Rcd at 3444; 30 FCC Rcd at 8030-31; 30 FCC Rcd at 8023; 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); 31 FCC Rcd at 7400.

Finally, the court ruled on the constitutionality of the TCPA as applied to the facts specific to the *Mey* case. *Mey*, 2017 WL 1193072 at *16-18. Here, Plaintiffs challenge the constitutionality of the cell phone call ban on its face. Thus, *Mey* is distinguishable from this case.

### b. *Strickler v. Bijora, Inc.*

*Strickler v. Bijora, Inc.*, 2012 U.S. Dist. LEXIS 156830 (N.D. Ill. Oct. 30, 2012) is distinguishable as it involved the question of whether the cell phone call ban applied to text messages and if so, whether that application was unconstitutional. *Id*. at *17.

### c. *Wreyford v. Citizens for Transp. Mobility, Inc.*

*Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378 (N.D. Ga. 2013) also evaluated the TCPA cell phone call ban as a content-neutral time, place, and manner restriction relying on *Moser*. *Id*. at 1380.

### d. *Woods v. Santander Consumer USA Inc.*

*Woods v. Santander Consumer USA Inc.*, 2017 U.S. Dist. LEXIS 47256 (N.D. Ala. Mar. 30, 2017) reviewed the TCPA cell phone call ban as a content-neutral restriction on speech. It did not consider the exemptions to the cell phone call ban. *Id*. at *6.

### 3. Other cases relied upon by Defendants, however, have nothing to do with the TCPA.

### a. *Patriotic Veterans, Inc. v. Zoeller.*

*Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303 (7th Cir. 2017) involved a challenge to Indiana's prerecorded telephone call statute by a nonprofit political group. Although the statute had exemptions, they all hinged on the relationship between the caller and the recipient of the call rather than the content of the message. *Id*. at 304.

13

### b. *Van Bergen v. Minnesota*.

*Van Bergen v. Minn.*, 59 F.3d 1541 (8th Cir. 1995) involved a challenge to a Minnesota law regulating the use of prerecorded messages by a candidate for Minnesota governor. Although the case discussed preemption by the TCPA, it did not question or review its constitutionality. *Id*. at 1545-46.

### III. CONCLUSION

Plaintiffs respectfully request that this Court declare the TCPA cell phone call ban to be an unconstitutional, content-based restriction of speech, enjoin its enforcement, and grant such other relief as the Court deems just and proper.

Dated: July 5, 2017

Respectfully Submitted,

  /s/ *Charles George*

WYRICK ROBBINS YATES & PONTON LLP
Charles George, NC #21003
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Telephone: (919) 781-4000
Facsimile: (919) 781-4865
Email: cgeorge@wyrick.com

-and-

  /s/ *William E. Raney*

COPILEVITZ & CANTER, LLC
William E. Raney, MO #46954 (*Pro hac vice*)
Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice*)
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email: braney@cckc-law.com
         kmitchell@cckc-law.com

14

Case 5:16-cv-00252-D   Document 36   Filed 07/05/17   Page 14 of 15

*Attorneys for Plaintiffs*