IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| AMERICAN ASSOCIATION OF POLITICAL CONSULTANTS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States,<br><br>FEDERAL COMMUNICATIONS COMMISSION,<br><br>Defendants. | Case No. 5:16-CV-252 (JCD) |

**REPLY IN SUPPORT OF**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

    I.    THE TCPA IS A VALID, CONTENT-NEUTRAL REGULATION OF SPEECH..................................................................................................................2

    II.   THE FCC ORDERS AND GOVERNMENT-DEBT EXEMPTION DO NOT CALL INTO QUESTION THE VALIDITY OF THE TCPA'S AUTODIALER RESTRICTION ...........................................................................4

    III.  THE TCPA IN ANY EVENT SATISFIES STRICT SCRUTINY ................................8

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Ayotte v. Planned Parenthood of N. New England*,
 546 U.S. 320 (2006) ...................................................................................................7

*Brickman v. Facebook, Inc.*,
 No. 16-cv-751, 2017 WL 386238 (N.D. Cal. Jan. 27, 2017)......................... 4, 6, 8, 9

*Cahaly v. Larosa*,
 796 F.3d 399 (4th Cir. 2015)......................................................................................3

*FCC v. Schreiber*,
 381 U.S. 279 (1965)...................................................................................................6

*Feldman v. Law Enforcement Assocs. Corp.*,
 955 F. Supp. 2d 528 (E.D.N.C. 2013) .......................................................................9

*Gomez v. Campbell-Ewald*,
 768 F.3d 871 (9th Cir. 2014), *aff'd*, 136 S.Ct. 663 (2016) ................................2, 3, 5

*Holt v. Facebook, Inc.*,
 No. 16-cv-2266, 2017 WL 1100564 (N.D. Cal. Mar. 9, 2017),
 *appeal docketed*, No. 17-80086 (9th Cir. May 12, 2017) ................................4, 8, 9

*INS v. Chadha*,
 462 U.S. 919 (1983) ..................................................................................................7

*Kissi v. Panzer*,
 664 F. Supp. 2d 120 (D.D.C. 2009)...........................................................................9

*Mey v. Venture Data, LLC*,
 No. 5:14-cv-123, 2017 WL 1193072 (N.D. W.V. Mar. 29, 2017)............................3

*Moser v. FCC*,
 46 F.3d 970 (9th Cir. 1995).............................................................................. 2, 3, 4

*Patriotic Veterans, Inc. v. Zoeller*,
 845 F.3d 303 (7th Cir. 2017)............................................................................ 2, 3, 8

*R.A.V. v. City of St. Paul*,
 505 U.S. 377 (1992) ..................................................................................................7

*Reed v. Town of Gilbert*,
 135 S. Ct. 2218 (2015) ..............................................................................................2

*Reno v. Am. Civil Liberties Union*,
 521 U.S. 844 (1997) ............................................................................................................9

*Stenlund v. Marriott Int'l, Inc.*,
 172 F. Supp. 3d 874 (D. Md. 2016) ....................................................................................9

*Strickler v. Bijora, Inc.*,
 No. 11-cv-3468, 2012 WL 5386089 (N.D. Ill. Oct. 30, 2012) ............................................3

*United States v. Under Seal*,
 819 F.3d 715 (4th Cir. 2016) ..............................................................................................7

*Van Bergen v. Minn.*,
 59 F.3d 1541 (8th Cir. 1995) ..............................................................................................3

*Williams-Yulee v. Florida Bar*,
 135 S. Ct. 1656 (2015) ........................................................................................................5

*Woods v. Santander Consumer USA Inc.*,
 No. 2:14-cv-2104, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) ..................................3, 6

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
 957 F. Supp. 2d 1378 (N.D. Ga. 2013) ...............................................................................3

**STATUTES**

28 U.S.C. § 2342(1) ....................................................................................................................5

47 U.S.C. § 227 ............................................................................................................................1

47 U.S.C. § 227(b)(1)(A) .............................................................................................................3

47 U.S.C. § 227(b)(1)(A)(iii) ..................................................................................................7, 10

47 U.S.C. § 227(b)(2)(C) .............................................................................................................5

47 U.S.C. § 402(a) .......................................................................................................................5

**OTHER AUTHORITIES**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 31 FCC Rcd. 9074 (July 5, 2016), *Petition for reconsideration Pending, 1541
 CG Docket NO. 02-278* .....................................................................................................7

## INTRODUCTION

Plaintiffs ask this Court to become the first to part with the overwhelming precedent across circuits upholding the constitutionality of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). However, Plaintiffs' opposition provides little basis for such an extraordinary holding. In their opposition, Plaintiffs do not dispute that the TCPA's prohibition of the use of automated dialing systems to make a call or send a text message to a cell phone user without the user's prior consent is content neutral. Nor do Plaintiffs address Defendants' argument that a contrary conclusion would not require invalidation of the statute, because the TCPA would survive strict scrutiny. Plaintiffs instead focus on certain exemptions to the prohibition either promulgated by the Federal Communications Commission ("FCC") or enacted by Congress. But as this Court made clear, the validity of the FCC orders is not at issue in this case. And Plaintiffs do not contest that the government-debt exception is severable from the portion of the TCPA that actually governs their conduct.

With no basis for challenging the TCPA's autodialer provision and no argument that the exemptions are not severable, Plaintiffs make the extraordinary claim that the Court should strike down the entirety of the autodialer provision because otherwise Congress and the FCC would still be able to promulgate content-based, unconstitutional exemptions in the future. Plaintiffs are entitled to no such relief, as such a holding would turn the doctrine of severability on its head and fly in the face of precedent making clear that where an invalid provision is severable, the concededly constitutional portions of the statute should remain in effect.

Setting aside Plaintiffs' unsupported claim that the statute as a whole must fall due to the ability of Congress to make laws and the FCC to give effect to those laws in the future, what remains is a statute that has been upheld by every court to consider its constitutionality.

Plaintiffs may quibble with each of these cases on various grounds, but this unanimity of precedent cannot be brushed aside merely because the facts of a case may not be identical in every respect to the present dispute. The TCPA's constitutionality has been reaffirmed under both intermediate and strict scrutiny, both before and after the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). The same result should apply here.

## ARGUMENT

### I. THE TCPA IS A VALID, CONTENT-NEUTRAL REGULATION OF SPEECH

Although Plaintiffs spend much of their reply brief attempting to distinguish prior cases upholding the constitutionality of the TCPA, they nowhere dispute that the autodialer provision itself is a content neutral time, place, and manner regulation that fully comports with the First Amendment. *See Gomez v. Campbell-Ewald*, 768 F.3d 871, 873 (9th Cir. 2014), *aff'd on other grounds*, 136 S. Ct. 633 (Jan. 20, 2016); *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995).[1] The Seventh Circuit recently reaffirmed this point in an analogous context and explained that neither the Supreme Court's decision in *Reed*, nor the Fourth Circuit's application of that decision in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015), calls that conclusion into question. *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305–06 (7th Cir. 2017) ("Preventing automated messages to persons who don't want their peace and quiet disturbed is a valid time, place, and manner restriction. Other circuits' decisions, which we have cited, spell out the reasoning. . . . *[T]hese decisions have not been called into question by* Reed.") (emphasis added); *id.* at 304 (rejecting

---

[1] Plaintiffs argue that *Campbell-Ewald* and *Moser* are irrelevant because they were decided before *Reed* or did not consider the various exemptions that Plaintiffs have highlighted here. Pls.' Reply. 8–9 (ECF No. 36). But for the reasons described *infra*, the exemptions Plaintiffs point to do not affect the constitutionality of the autodialer provision and therefore need not be considered in this case. Thus, both *Campbell-Ewald* and *Moser* have continued relevance to this case.

arguments that *Reed* or *Cahaly* "made these decisions obsolete and [therefore] doom[] both state and federal anti-robocall statutes as instances of content discrimination").

Like the state statute upheld in *Patriotic Veterans* – and unlike the ordinance in *Reed* – the autodialer provision of the TCPA does not depend on "what message may be conveyed." *Patriotic Veterans*, 845 F. 3d at 306. It focuses instead on the method of the call, restricting the use of an autodialer to make calls to cell phones without the consent of the called party. 47 U.S.C. § 227(b)(1)(A). As such, and as numerous courts have held, it is a quintessential time, place, and manner regulation that furthers the government's interest in privacy and leaves open ample alternative channels of communication. *See Moser*, 46 F.3d at 973; *Campbell-Ewald*, 768 F.3d at 876; *Mey v. Venture Data, LLC*, No. 5:14-cv-123, 2017 WL 1193072 (N.D. W.V. Mar. 29, 2017); *Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-2104, 2017 WL 1178003, at *5 (N.D. Ala. Mar. 30, 2017); *Strickler v. Bijora, Inc.*, No. 11-cv-3468, 2012 WL 5386089, at *5 (N.D. Ill. Oct. 30, 2012); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380–82 (N.D. Ga. 2013). *See also Patriotic Veterans*, 845 F.3d at 305–06; *Van Bergen v. Minn.*, 59 F.3d 1541, 1549–56 (8th Cir. 1995).[2]

---

[2] Plaintiffs' half-hearted attempt to "distinguish" the overwhelming weight of authority upholding the constitutionality of the TCPA's autodialer provision is unavailing. Even if the cited cases are not identical to this one, those cases demonstrate, and reaffirm, that the statute's core provision – or state analogs much like it – are content-neutral time, place, and manner restrictions. For example, in *Van Bergen*, the Eighth Circuit upheld Minnesota's anti-robocall statute, which it described as "virtually identical" to the TCPA, under intermediate scrutiny. *Van Bergen*, 59 F.3d at 1548 (citation omitted). In *Patriotic Veterans*, the Seventh Circuit upheld an Indiana statute, "which contains a similar limit" to the TCPA. *Patriotic Veterans*, 845 F.3d at 304. In so doing, the court relied explicitly on cases upholding the TCPA and rejected the plaintiff's contention that *Reed* and *Cahaly* "made these decisions obsolete and dooms both state and federal anti-robocall statutes as instances of content discrimination." *Id.* And each of the district court cases similarly affirmed that the TCPA itself is a content neutral restriction that survives intermediate scrutiny. *See Mey*, 2017 WL 1193072, at *17; *Woods*, 2017 WL 1178003, at *5; *Strickler*, 2012 WL 5386089, at *5; *Wreyford*, 957 F. Supp. 2d at 1380–82. Plaintiffs' arguments do not demonstrate

3

**II. THE FCC ORDERS AND GOVERNMENT-DEBT EXEMPTION DO NOT CALL INTO QUESTION THE VALIDITY OF THE TCPA'S AUTODIALER RESTRICTION**

Unable to attack the validity of the autodialer provision on its own terms, Plaintiffs instead allege that the existence of concededly severable exemptions to the autodialer provision somehow "cause the [autodialer provision] to be a content-based restriction of speech." Pls.' Reply 3. This argument has no legal basis and should be rejected.

First, as three separate courts have recognized, the FCC's ability to promulgate exemptions to the autodialer provision does not render the statute itself unconstitutional. In *Moser*, for example, the Ninth Circuit rejected the plaintiff's argument that the applicable level of scrutiny should be affected by the FCC's ability to create exemptions distinguishing between commercial and noncommercial speech. *Moser*, 46 F.3d at 973. Because the TCPA "in no way requires the FCC to adopt such exemptions by regulation, order, or otherwise," and because such exemptions could be challenged on their own through a separate process, the Ninth Circuit held that these exemptions were irrelevant to the constitutional challenge. *Id.* Similarly, in *Brickman v. Facebook, Inc.*, No. 16-cv-751, 2017 WL 386238 (N.D. Cal. Jan. 27, 2017) and *Holt v. Facebook, Inc.*, No. 16-cv-2266, 2017 WL 1100564 (N.D. Cal. Mar. 9, 2017), the courts rejected constitutional challenges to the FCC's ability to promulgate exemptions to the autodialer provision, explaining that the FCC could promulgate content-neutral exemptions pursuant to such authority, and that "[t]he mere possibility that the FCC could create a content-based exception at some later time" does not render the statute itself unconstitutional. *Brickman*, 2017 WL 386238, at *6; *accord Holt*, 2017 WL 1100564, at *8.

---

that the differences between the facts of these cases and the present one are in any sense meaningful.

4

Moreover, even if the FCC issued a content-based exemption using its authority under 47 U.S.C. § 227(b)(2)(C), the exemption would not automatically be invalid; it would instead be subject to a constitutional challenge in the court of appeals as provided for in the Hobbs Act, *see* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1), and would then be judged under the appropriate level of scrutiny. *Cf., e.g.*, *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1666 (2015) (upholding state ban on campaign donation solicitation by candidates for judicial office under strict scrutiny).

Accordingly, to the extent one or more of the FCC-promulgated "exemptions"[3] Plaintiffs point to is a content-based restriction that would not withstand strict scrutiny, such an exemption could be invalidated by the court of appeals on an individual basis. But Plaintiffs fail to show that the invalidation of these agency enactments on a case-by-case basis renders unconstitutional the entirety of the statute pursuant to which they were issued. Indeed, Plaintiffs have no response to the numerous authorities making clear that where agency regulations are deemed unconstitutional, courts invalidate the regulations but leave in place the authorizing statute. *See* Defs.' Br. 15–16 (ECF No. 33). Rather than dispute this well-established proposition, Plaintiffs claim that the ability to challenge any allegedly offending regulations directly would not

---

[3] As explained in Defendants' opening brief, several of the "exemptions" Plaintiffs point to are not exemptions promulgated pursuant to 47 U.S.C. § 227(b)(2)(C), but are instead clarifications of the statute's reach. Though Plaintiffs contend that these clarifications nevertheless exempt calls "based on the speakers' identity or the content of the calls," Pls.' Reply 5, that is incorrect. These orders respond to specific inquiries regarding how the consent requirement might apply to specific calls made by specific callers. The fact that the FCC has responded to questions involving certain callers does not limit the consent requirement's reach only to, for example, wireless carriers or intermediaries. Similarly, the "exemption" for calls made by federal government officials is not a content-based exemption. It is simply the FCC's recognition that the statute does not purport to waive the government's sovereign immunity, as the Supreme Court has recognized. *See Campbell-Ewald*, 136 S. Ct. at 672 ("The United States and its agencies . . . are not subject to the TCPA's prohibitions because no statute lifts their immunity.").

sufficiently redress their injury because of the FCC's "existing and actualized ability to create future content-based exemptions." Pls.' Reply 8. But once again the validity of such hypothetical future exemptions would be subject to challenge under the Hobbs Act, and if found unconstitutional, such exemptions would be struck while the statute remained in place. Moreover, invalidating a congressionally-enacted statute based on the possibility of future unconstitutional agency action would run afoul of the "presumption to which administrative agencies are entitled—that they will act properly and according to the law." *FCC v. Schreiber*, 381 U.S. 279, 296 (1965).

Similarly, Plaintiffs do not dispute that the government-debt exception is severable from the remainder of the TCPA, nor could they plausibly. "[T]here is no evidence that Congress would not have enacted the TCPA without the exception for government debt. To the contrary, Congress did enact the TCPA without the exception for government debt, and the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country." *Woods v. Santander Consumer USA, Inc.*, No. 2:14-cv-02104, 2017 WL 1178003, at *3 n.6 (N.D. Al. Mar. 30, 2017) (citations omitted); *see Brickman*, 2017 WL 386238, at *8 ("[E]ven assuming this newly-added exception were to be invalid, it would not deem the entire TCPA to be unconsitutitonal because the exception would be severable from the remainder of the statute."). Rather, Plaintiffs contend that severing the exception is insufficient because "Congress's ability to amend the TCPA is ongoing," meaning that Congress could enact future unconstitutional exemptions. By that measure, however, this Court could never provide adequate relief in cases of constitutional challenges to statutes because Congress could always enact a new statute that may have the same constitutional defect as before. The Court cannot rule based on speculation regarding what Congress may do in the future. It can

6

only resolve the controversy actually present before it. And in so doing, the Court should "limit the solution to the problem," *United States v. Under Seal*, 819 F.3d 715, 721 (4th Cir. 2016) (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006)), and leave in place the portions of a statute that Congress would have enacted independently of any invalid portions. *See INS v. Chadha*, 462 U.S. 919, 931 (1983). The Court should reject Plaintiffs' attempt to subvert this well-settled severability analysis by reaching out to invalidate concededly content neutral and constitutional portions of the TCPA.[4]

As Defendants explained in their opening brief, because the government-debt exception is plainly severable and its invalidation would have no effect on Plaintiffs, it need not be considered in this case at all. *See* Defs.' Br. 17–19. But even if considered here, the exception does not render the statute content based. Contrary to Plaintiffs' contention, the FCC has recognized that because calls made pursuant to the exception must be made "solely to collect a debt," the exception is limited to "calls made to the debtor or another person or entity legally responsible for paying the debt." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd. 9074, 9083 ¶ 21 (July 5, 2016), *petitions for reconsideration pending*, CG Docket No. 02-278. Thus, in limiting the exception to calls made "solely to collect a debt," 47 U.S.C. § 227(b)(1)(A)(iii), the FCC recognized that the exception is based on the relationship of the parties—the owner or servicer of the government-backed debt, and the debtor

---

[4] Plaintiffs appear to contend that the severability analysis should change because this case involves speech and the First Amendment's goal is "more speech." Pls.' Reply. 8. But they cite no case supporting a different severability analysis in free speech cases. And indeed, the Supreme Court has recognized that the categories of content-neutral and content-based restrictions may mean that a broader speech restriction is constitutional while a narrower one is not. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 (1992) ("Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government."). There is thus no reason to think that the severability analysis would not apply equally here.

7

or guarantor responsible for paying it. Such relationship-based exemptions have been upheld as content neutral. *See Patriotic Veterans*, 845 F.3d at 305. Moreover, the exemption applies only to those who are collecting debts owed to the government that the government could collect itself in the same manner, as the government is not subject to the TCPA. *See Brickman*, 2017 WL 386238, at *8.

## III. THE TCPA IN ANY EVENT SATISFIES STRICT SCRUTINY.

In addition to avoiding any discussion of the constitutionality of the provision of the TCPA that actually applies to their speech, Plaintiffs' opposition fails to respond to Defendants' argument that the TCPA would satisfy strict scrutiny. As Defendants explained in their opening brief, every court to consider a First Amendment challenge to the TCPA has concluded that it is constitutional, including two courts that evaluated the statute under strict scrutiny. *See Brickman*, 2017 WL 386238, at *6–9; *Holt*, 2017 WL 1100564, at *7-11. Despite Plaintiffs' attempts to distinguish these cases, the unanimity of precedent makes clear that, regardless of the standard applied, the TCPA is constitutional.

As recognized by the courts in *Brickman* and *Holt* in upholding the TCPA under strict scrutiny, the TCPA "serves a compelling government interest in promoting residential privacy." *Brickman*, 2017 WL 386238, at *7; *accord Holt*, 2017 WL 1100564, at *8. The courts further held that the TCPA is narrowly tailored, rejecting claims that the statute is underinclusive, overinclusive, or that there exist alternatives that would be as effective in protecting privacy. *Brickman*, 2017 WL 386238, at *7–9; *Holt*, 2017 WL 1100564, at *9–10. Plaintiffs do not take issue with the asserted compelling interest, and though they claimed the ban was overinclusive in their opening brief, *see* Pls.' Br. 21 (ECF No. 31), they have not pressed that argument in their reply. Nor have they responded to Defendants' explanations as to why the proposed less-

restrictive alternatives would not be "at least as effective in achieving the legitimate purpose th[e] statute was enacted to serve."[5] *See Brickman*, 2017 WL 386238, at *8 (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997)) (rejecting proposed alternatives including time-of-day limitations, mandatory disclosure of the caller's identity, and do-not-call lists); *accord Holt*, 2017 WL 1100564, at *9–10. In an attempt to distinguish *Brickman*, Plaintiffs argue that the statute is underinclusive, focusing on the FCC exemptions and the government-backed debt exemption. Pls.' Reply 10–11. But as already explained, the statute itself does not contain the FCC-promulgated exemptions that Plaintiffs believe demonstrate underinclusivity, and the validity of the specific exemptions is not at issue in this case. Similarly, for reasons already explained, the government debt exemption need not be considered, but to the extent that it is, the exemption is limited in scope and "leave[s] negligible damage to the statute's interest in protecting privacy." *Brickman*, 2017 WL 386238 at *8; *accord Holt*, 2017 WL 1100564 at *9.

In sum, the TCPA is a narrow limitation on speech that does not prohibit Plaintiffs from communicating any particular message. Indeed, the TCPA even allows for Plaintiffs to disseminate their messages by way of autodialer, so long as they obtain consent. The statute is narrowly tailored to limit only the kind of calls and texts that cause the intrusion into residential privacy that spurred the statute's enactment. Given this careful tailoring, the availability of numerous alternative means for Plaintiffs to communicate their messages, and the lack of equally

---

[5] Because Plaintiffs have failed to address these arguments, the Court should treat the points as conceded. *See Feldman v. Law Enforcement Assocs. Corp.*, 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013) (finding that plaintiff had conceded that summary judgment was appropriate on various claims where he "failed to respond to the arguments raised" in defendants' motion for summary judgment); *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded.").

effective alternatives for protecting residential privacy, the TCPA survives strict scrutiny. *See* Defs.' Br. 20–28.

## CONCLUSION

For the foregoing reasons, the Court should uphold the constitutionality of § 227(b)(1)(A)(iii) and grant Defendants Motion for Summary Judgment.

Dated: July 20, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN STUART BRUCE
Acting U.S. Attorney

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

 */s/ Aimee W. Brown*
AIMEE W. BROWN (IL Bar 6319622)
ANJALI MOTGI
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone: (202) 305-0845
Facsimile: (202) 616-8470
Aimee.W.Brown@usdoj.gov

*Counsel for Defendants*