|  |  |  |
|---|---|---|
| AMERICAN ASSOCIATION OF | ) | |
| POLITICAL CONSULTANTS, INC., | ) | |
| DEMOCRATIC PARTY OF OREGON, | ) | |
| INC., PUBLIC POLICY POLLING, LLC, | ) | |
| TEA PARTY FORWARD PAC, and | ) | |
| WASHINGTON STATE DEMOCRATIC | ) | |
| CENTRAL COMMITTEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MONTY WILKINSON, | ) | |
| Acting Attorney General of the | ) | |
| United States, and FEDERAL | ) | |
| COMMUNICATIONS COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

On May 12, 2016, the American Association of Political Consultants, Inc. ("AAPC"), the Democratic Party of Oregon, Inc., Public Policy Polling, LLC, the Tea Party Forward PAC, and the Washington State Democratic Central Committee (collectively, "plaintiffs") filed this action to invalidate the 1991 autodialing ban to cell phones in 47 U.S.C. § 227(b)(1)(A)(iii). See Compl. [D.E. 1].[1] Plaintiffs did so in order to make robocalls to cell phones to solicit donations and

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii) provides:

(b) Restrictions based on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–

campaign for political causes. See id. ¶¶ 6–10. In support, plaintiffs argued that the 1991 autodialing ban, when coupled with the statute's 2015 exception permitting robocalls to collect government debts, violated the First Amendment and warranted invalidating the 1991 ban on robocalls. See id. ¶¶ 32–56. On July 6, 2020, the Supreme Court agreed with plaintiffs that the 1991 autodialing ban, when coupled with the statute's 2015 exception permitting robocalls to collect government debts, violated the First Amendment, but declined to invalidate the 1991 ban on robocalls. See Barr v. Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2346–56 (2020). Instead, the Court upheld the 1991 ban on robocalls but severed and invalidated the 2015 exception permitting robocalls to collect government debts. See id. Thus, after nearly five years of litigation, plaintiffs do not have a judgment giving them the relief they asked for in their complaint or amended complaint. Nonetheless, on August 4, 2020, AAPC self-identified as a "prevailing party," moved for attorneys' fees under 28 U.S.C. § 2412(d)(1)(A) [D.E. 54], and filed a memorandum in support [D.E. 55]. On August 25, 2020, the government responded in opposition [D.E. 59]. On September

---

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)[.]

47 U.S.C. § 227(b)(1)(A)(iii).

2

8, 2020, AAPC replied [D.E. 60]. As explained below, AAPC is not a "prevailing party" under 28 U.S.C. § 2412(d)(1)(A). Alternatively, the government's litigation position was "substantially justified." Thus, the court denies AAPC's motion for attorneys' fees.

I.

On May 12, 2016, plaintiffs sued United States Attorney General Loretta Lynch in her official capacity and the Federal Communications Commission ("the FCC") (collectively, "the government"). See Compl. [D.E. 1].[2] Plaintiffs alleged that the autodialing ban in 47 U.S.C. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991 ("TCPA"), when coupled with the 2015 government-debt exception to the autodialing ban, violated the First Amendment. See Am. Compl. [D.E. 18] ¶¶ 1–4. Specifically, plaintiffs argued that the 2015 government-debt exception to the autodialing ban rendered the autodialing ban a content-based restriction on speech which failed strict scrutiny. See id. ¶¶ 20–63. Plaintiffs sought a declaratory judgment and preliminary and permanent injunctions barring enforcement of the autodialing ban. See id. at 15. In response, the government argued in this court that the autodialing ban was content-neutral and, in any event, the autodialing ban coupled with the government-debt exception satisfied strict scrutiny. See [D.E. 35] 8–9. In support, the government cited cases from the five other district courts that had reached the same conclusion. See id. at 13–20. The government also argued that the 2015 government-debt exception was "severable from the remainder of the statute." See id. at 24–27.

---

[2] A public officer's "successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Thus, throughout the litigation, the court has substituted the Attorney General or Acting Attorney General as a named defendant. Moreover, on July 11, 2017, Tea Party Forward withdrew from this lawsuit. See [D.E. 37, 38].

3

On March 26, 2018, the court denied plaintiffs' motion for summary judgment and granted the government's motion for summary judgment. See Am. Ass'n of Pol. Consultants v. Sessions, 323 F. Supp. 3d 737, 747 (E.D.N.C. 2018). The court concluded that although the autodialing ban was a content-based restriction on speech, it satisfied strict scrutiny even taking into account the 2015 government-debt exception. See id. at 742–47. The court did not reach the severance argument. See id. Plaintiffs appealed. See [D.E. 43].

On appeal, the government again argued that the autodialing ban was content-neutral or, alternatively, that the autodialing ban, coupled with the government-debt exception, satisfied strict scrutiny. See Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n, 923 F.3d 159, 166, 168 (4th Cir. 2019). Alternatively, the government argued that if the court determined that the autodialing ban coupled with the 2015 government-debt exception failed to satisfy strict scrutiny, then the appropriate remedy was "severance of the [government-debt exception] from the automated call ban." Id. at 171. On April 24, 2019, the United States Court of Appeals for the Fourth Circuit held that the autodialing ban, when coupled with the 2015 government-debt exception, was content-based and failed to satisfy strict scrutiny. See id. at 165–70. However, the Fourth Circuit sided with the government regarding the appropriate remedy and severed and invalidated the 2015 government-debt exception in lieu of invalidating the 1991 autodialing ban. See id. at 171–72. The government petitioned for a writ of certiorari, which the Supreme Court granted on January 10, 2020. See [D.E. 51, 52].

At the Supreme Court, the government once again argued that the autodialing ban when coupled with the 2015 government debt exception was not content-based. See [D.E. 59-5] 26–34. The government ultimately conceded, however, that the autodialing ban when coupled with the 2015 government-debt exception could not satisfy strict scrutiny. See Am. Ass'n of Pol. Consultants, 140

4

S. Ct. at 2347. On July 6, 2020, the Supreme Court affirmed the Fourth Circuit's decision in a fractured opinion. See id. at 2356. A plurality of the Court held that the autodialing ban when coupled with the 2015 government-debt exception was content-based and failed to satisfy strict scrutiny. Like the Fourth Circuit, the plurality agreed with the government and held that the appropriate remedy was to sever and invalidate the 2015 government-debt exception. See id. at 2355–63. Three justices dissented and stated that they would have held that strict scrutiny was inapplicable and that the 2015 government-debt exception did not violate the First Amendment. See id. at 2357–63 (Breyer, J., joined by Ginsburg, and Kagan, JJ., concurring in part, dissenting in part). Alternatively, those three justices agreed that the 2015 government-debt exception was severable and invalid. See id. at 2363. As such, the Court agreed with plaintiffs that the autodialing ban coupled with the 2015 government-debt exception violated the First Amendment, but plaintiffs failed to obtain their requested relief. See Am. Compl. [D.E. 18] 15. After all, following the Supreme Court's decision, the government continues to enforce the autodialing ban against plaintiffs, including AAPC, and AAPC cannot make robocalls to cell phones to solicit donations and campaign for political causes.

## II.

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provides that certain parties who prevail in litigation with the United States are entitled to reimbursement of reasonable attorneys' fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); see Pierce v. Underwood, 487 U.S. 552, 556–57 (1988); Reich v. Walker W. King Plumbing & Heating Contractor, Inc., 98 F.3d 147, 150 (4th Cir. 1996); Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 137 (4th Cir. 1993). "The party seeking fees bears the burden of proving that it was the prevailing party." Reich,

5

98 F.3d at 150. "A district court has broad discretion when determining whether fees should be awarded under EAJA, and the court's decision to award fees is . . . entitled to deference." United States v. Cox, 575 F.3d 352, 358–59 (4th Cir. 2009); see Pierce, 487 U.S. at 562–63.

A plaintiff is a prevailing party when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992) (emphasis added); see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Mercer v. Duke Univ., 401 F.3d 199, 203 (4th Cir. 2005); Roanoke River, 991 F.2d at 139.[3] "No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment"; therefore, "a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." Farrar, 506 U.S. at 112–13; see Hewitt v. Helms, 482 U.S. 755, 762 (1987); Brister v. Faulkner, 214 F.3d 675, 687 (5th Cir. 2000); Va. Soc'y for Human Life, Inc. v. Caldwell, 26 F. Supp. 2d 868, 871 (W.D. Va. 1998), aff'd, 187 F.3d 633 (4th Cir. 1999) (unpublished table opinion). Instead, for a plaintiff to be a prevailing party, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." Farrar, 506 U.S. at 111; see Statewide Reapportionment Advisory Comm. v. Beasley, 99 F.3d 134, 136 (4th Cir. 1996); N.C. All. for Transp. Reform, Inc., 151 F. Supp. 2d at 672–73.

To determine if the government's position is substantially justified, the court must examine whether, "from the totality of the circumstances, . . . the government acted reasonably in causing the litigation or in taking a stance during the litigation." Roanoke River, 991 F.2d at 139; see Cody v.

_____

[3] Although Farrar and Mercer involve fees sought pursuant to 42 U.S.C. § 1988, the Court interprets fee-shifting provisions consistently. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 n.4 (2001); N.C. All. for Transp. Reform, Inc. v. U.S. Dep't of Transp., 151 F. Supp. 2d 661, 671 (M.D.N.C. 2001).

6

Caterisano, 631 F.3d 136, 141 (4th Cir. 2011); Cox, 575 F.3d at 359. The government's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." Pierce, 487 U.S. at 566 n.2; see Cody, 631 F.3d at 141. The government bears the burden of proving that its position was substantially justified. See E.E.O.C. v. Clay Printing Co., 13 F.3d 813, 815 (4th Cir. 1994); Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1991).

A.

As for whether AAPC is a prevailing party, AAPC's lawsuit sought to invalidate the autodialing ban so that AAPC could use autodialers and prerecorded messages to make robocalls to solicit donations and campaign for political causes. Specifically, AAPC argued that the 2015 government-debt exception rendered the 1991 autodialing ban facially unconstitutional and sought a declaratory judgment and an injunction barring enforcement of the 1991 autodialing ban. See Am. Compl. [D.E. 18] 15. AAPC also argued that severance and invalidation of the 2015 government-debt exception was "improper" because the government-debt exception "invalidate[d] the entirety of the automated call ban." Am. Ass'n of Pol. Consultants, 923 F.3d at 170–71; see Am. Ass'n Pol. Consultants, 140 S. Ct. at 2355 ("According to plaintiffs, a court should not cure a First Amendment violation by outlawing more speech.") (quotations omitted).

Although the Fourth Circuit and Supreme Court ultimately agreed that the 1991 autodialing ban coupled with the 2015 government-debt exception violated the First Amendment, they rejected AAPC's severability argument. Instead, the Fourth Circuit and Supreme Court cured the First Amendment violation by severing and invalidating the 2015 government-debt exception. See Am. Ass'n of Pol. Consultants, 140 S. Ct. at 2355 ("In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction."); Am.

7

Ass'n of Pol. Consultants, 923 F.3d at 170–72. Thus, AAPC did not obtain the relief it requested in its amended complaint. See Am. Compl. [D.E. 18] 15. In seeking attorneys' fees, however, AAPC rewrites history and contends that it is a "prevailing party" because the Supreme Court's decision "fully addresses AAPC's First Amendment injury by eliminating the unequal treatment comprising the First Amendment complaint at the heart of their suit." [D.E. 55] 7 (alteration and quotations omitted).

The court rejects AAPC's attempt to rewrite history. Notably, until AAPC filed its motion for attorneys' fees, plaintiffs only defined victory as an order invalidating the autodialing ban. Plaintiffs made this point in their amended complaint, where they asked this court to enjoin "the enforcement of the cell phone ban." Am. Compl. [D.E. 18] 15. Plaintiffs made this point again in their summary judgment briefing, where they declared that "[t]his case is a challenge to only the cell phone ban . . . . Plaintiffs do not challenge" the entire TCPA or the exceptions. [D.E. 31] 7. Plaintiffs also emphasized that "severance" of the exceptions "is not a suitable cure." [D.E. 36] 7. Plaintiffs' position remained the same on appeal to the Fourth Circuit, where plaintiffs stated that severance and invalidation of the government-debt exception was "not the appropriate remedy" because after severance and invalidation, "the cell phone call ban would . . . still expose [plaintiffs] to liability if they called consumers on their cell phones without prior express consent . . . ." [D.E. 59-3] 17. Likewise, in the Supreme Court, plaintiffs supported the government's petition for certiorari because the Fourth Circuit's decision severing and invalidating the government-debt exception "den[ies] the challengers any relief . . . ." [D.E. 59-4] 15 (emphasis added). Similarly, in its merits brief, plaintiffs stated that severing and invalidating the government-debt exception but leaving the autodialing ban in place "does nothing to remedy the actual injury that [plaintiffs] have suffered . . . ." [D.E. 59-6] 30.

8

The Supreme Court's decision in this case amounts to a judicial pronouncement that the 1991 autodialing ban, when coupled with the 2015 exception permitting robocalls to collect government debts, violated the First Amendment, unaccompanied by an enforceable judgment "that directly benefits the plaintiff." Farrar, 506 U.S. at 111–12. Tellingly, plaintiffs initiated and maintained this action to invalidate the autodialing ban, but the autodialing ban remains enforceable against plaintiffs, and plaintiffs cannot make their desired robocalls. Accordingly, AAPC is not a prevailing party. See Farrar, 506 U.S. at 109–13; Hewitt, 482 U.S. at 762; Hensley, 461 U.S. at 433; Mercer, 401 F.3d at 203; Faulkner, 214 F.3d at 687; Roanoke River, 991 F.2d at 139; Va. Soc'y, 26 F. Supp. 2d at 871.

In opposition, AAPC cites the Supreme Court's plurality's statement in response to Justice Gorsuch's dissent that "the First Amendment complaint at the heart of [plaintiffs'] suit was unequal treatment" and that "[i]nvalidating and severing the government-debt exception fully addresses that First Amendment injury." Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. at 2355. The plurality made this statement to reflect that plaintiffs had standing to sue, even though they did not receive the relief they sued to get: the ability to make robocalls to cell phones. See id.

Coach Herm Edwards once famously declared, "You play to win the game!" Nat'l Football League, Top 50 Sound FX | #23: Herm Edwards: You Play to Win the Game! | NFL, YouTube (Nov. 13, 2015), https://www.youtube.com/watch?v=AK7fEjrqabg. In football, a win means that your team scored more points than the other team. Thus, for example, at the end of a football game, the team with fewer points cannot cite the fact that it had more rushing yards than its opponent and declare victory. In football, victory is measured by the final score alone. So too in litigation when a party seeks attorneys' fees as a "prevailing party" under a fee-shifting statute. It is not enough for a plaintiff to exclaim, "we did not get the relief we sought, but the Supreme Court said we had

9

standing." To be sure, for a plaintiff to be a prevailing party, the plaintiff must have standing. See Shaw v. Hunt, 154 F.3d 161, 166 (4th Cir. 1998). However, having standing is necessary, but not sufficient, for a plaintiff to be a prevailing party. Id. To be a "prevailing party," a plaintiff needs both standing and an enforceable judgment "that directly benefits the plaintiff." Farrar, 506 U.S. at 111–12. AAPC does not have such an enforceable judgment, and it cannot make the robocalls it wants to make. Thus, AAPC is not a prevailing party.

## B.

Alternatively, the court denies AAPC's motion for attorneys' fees because the government's litigation position was "substantially justified." In opposing AAPC's First Amendment challenge to the autodialing ban in this court and the Fourth Circuit, the government argued that the autodialing ban was content-neutral and, in any event, the autodialing ban, even when coupled with the 2015 government-debt exception, satisfied strict scrutiny. See [D.E. 35] 6–28.[4]  The court agreed with the government and granted summary judgment. See Am. Ass'n of Pol. Consultants, 323 F. Supp. 3d at 747. On appeal, the Fourth Circuit was the first federal circuit court to address whether the autodialing ban coupled with the 2015 government-debt exception violated the First Amendment and, if so, to address the proper remedy. See Am. Ass'n of Pol. Consultants, 923 F.3d at 172; Gallion v. Charter Commc'ns Inc., 287 F. Supp. 3d 920, 924–25 (C.D. Cal. 2018) (noting that, as of February 2018, no appellate court had considered the constitutionality of the autodialing ban following the addition of the 2015 government-debt exception). The Fourth Circuit held that the autodialing ban, when coupled with the 2015 government-debt exception, was content-based and failed strict scrutiny. See Am. Ass'n of Pol. Consultants, 923 F.3d at 170. Ultimately, a plurality

---

[4]  At the Supreme Court, the government conceded that it could not satisfy strict scrutiny to justify the 2015 government-debt exception. See Am. Ass'n of Pol. Consultants, 140 S. Ct. at 2347.

of the Supreme Court affirmed the Fourth Circuit's decision, but in a fractured opinion. See Am. Ass'n of Pol. Consultants, 140 S. Ct. at 2356. As discussed, three justices dissented and stated that they would have held that the 2015 government-debt exception did not violate the First Amendment and, alternatively, that the 2015 government-debt exception should be severed and invalidated. See id. at 2363 (Breyer, J., joined by Ginsburg, and Kagan, JJ., concurring in part, dissenting in part).

To determine substantial justification, the court must evaluate whether the government's argument had a reasonable basis in law and fact or is "justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at 565; Nat'l Org. for Marriage, Inc. v. United States, 807 F.3d 592, 597 (4th Cir. 2015); Cody, 631 F.3d at 141. In doing so, the court considers the totality of the circumstances surrounding the litigation, including the views of other courts on the government's position. See Nat'l Org. for Marriage, 807 F.3d at 597–98; Cox, 575 F.3d at 357; Roanoke River, 991 F.2d at 139; United States v. Paisley, 957 F.2d 1161, 1166 (4th Cir. 1992). In this case, when the government adopted its position, all five district courts that had addressed the issue agreed that the 1991 autodialing ban, when coupled with the 2015 government-debt exception, survived strict scrutiny. See Gallion, 287 F. Supp. 3d at 926–31; Greenley v. Laborers' Int'l Union of N. Am., 271 F. Supp. 3d 1128, 1145–51 (D. Minn. 2017); Mejia v. Time Warner Cable Inc., Nos. 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 WL 3278926, at *12–17 (S.D.N.Y. Aug. 1, 2017) (unpublished); Holt v. Facebook, Inc., 240 F. Supp. 3d 1021, 1032–34 (N.D. Cal. 2017); Brickman v. Facebook, Inc., 230 F. Supp. 3d 1036, 1043–49 (N.D. Cal. 2017). That government position was undermined only when the issue reached the Fourth Circuit, where the government continued to press its alternative severance argument.[5] When the Supreme Court granted the government's petition for

---

[5] As the Fourth Circuit noted, this court did not reach the government's alternative severance argument. See Am. Ass'n of Pol. Consultants, Inc., 923 F.3d at 170.

certiorari, only one other federal circuit court had addressed the issue. See Duguid v. Facebook, Inc., 926 F.3d 1146, 1156–57 (9th Cir. 2019) (agreeing with the Fourth Circuit and holding that the 1991 autodialing ban coupled with the 2015 government-debt exception failed strict scrutiny). However, both the Fourth and Ninth Circuits agreed with the government's alternative position that the correct remedy was to sever and invalidate the 2015 government-debt exception. See Duguid, 926 F.3d at 1157; Am. Ass'n of Pol. Consultants, 923 F.3d at 172.

Ultimately, a majority of the Supreme Court was unable to agree on the merits determination. See Am. Ass'n of Pol. Consultants, 140 S. Ct. at 2356–67. Moreover, three justices agreed with the government's position that the statute did not violate the First Amendment. See id. at 2357–63 (Breyer, J., joined by Ginsburg and Kagan, JJ., concurring in part, dissenting in part). Furthermore, seven justices agreed with the government's position that the appropriate remedy was to sever and invalidate the 2015 government-debt exception and leave the 1991 autodialing ban intact. See id. at 2356–63. Only Justices Thomas and Gorsuch agreed with plaintiffs' argument that the appropriate remedy was to invalidate the 1991 autodialing ban. See id. at 2363–67 (Gorsuch, J., joined by Thomas, J., concurring in part, dissenting in part).

Considering the totality of the circumstances—most significantly the support found in seven Supreme Court justices' opinions, the Fourth and Ninth Circuits' decisions, and in the opinions of five other district courts when the government adopted its position—the government's position was "justified to a degree that could satisfy a reasonable person." Cox, 575 F.3d at 355 (quotation omitted); see Pierce, 487 U.S. at 565; Nat'l Org. for Marriage, 807 F.3d at 597–98. Two other facts buttress this conclusion. First, the litigation challenging the autodialing ban coupled with the government-debt exception and the request to invalidate the autodialing ban raised an issue of first impression. See Cody, 631 F.3d at 142 ("litigating cases of first impression is generally justifiable");

12

Hyatt v. Shalala, 6 F.3d 250, 256 (4th Cir. 1993) (same). Second, throughout the litigation, the government used justifiable alternative arguments to defend the constitutionality of the autodialing ban coupled with the government-debt exception. See League of Women Voters of Cal. v. Fed. Commc'ns Comm'n, 798 F.2d 1255, 1259 (9th Cir. 1986); Grace v. Burger, 763 F.2d 457, 458 n.5 (D.C. Cir. 1985) ("situations in which the government's defense of the constitutionality of a federal statute fails the 'substantially justified' test should be exceptional"). Although the government conceded in the Supreme Court that the autodialing ban coupled with the government-debt exception could not satisfy strict scrutiny, that concession does not require a different result. See Pierce, 487 U.S. at 569; Nat'l Org. for Marriage, 807 F.3d at 599 ("The government could take a position that is substantially justified, yet lose." (alteration and quotation omitted)); Paisley, 957 F.2d at 1167; Evans v. Sullivan, 928 F.2d 109, 110 (4th Cir. 1991). Accordingly, under the totality of the circumstances, the government's position was substantially justified.

                                    III.

    In sum, the court DENIES plaintiffs' motion for attorneys' fees [D.E. 54].

    SO ORDERED. This _11_ day of February 2021.


                                    James C Dever
                                    JAMES C DEVER III
                                    United States District Judge


                                    13